**STATE, Plaintiff, v. MARSHALL, Defendant.**

Municipal Court, Piqua.

No. 6411. Decided February 15, 1952.

569

Bernard S. Keyt, Piqua, for state.
Richard A. Goater, Piqua, for defendant.

## OPINION

By CROMER, J.

On February 5, 1952, an affidavit was filed in this court against the defendant, who was charged with the violation of §6367-19(a) GC. This is one of the sections of The Uniform Traffic Act and charges the defendant with operating a vehicle while "under the influence of intoxicating liquor."

The affidavit was signed by James Zimpher, a police officer of the City of Piqua. There is nothing on the face of the affidavit which is unusual. The case, in the regular order of court business, was set for arraignment at 3:00 P. M. on Tuesday, Fegruary 5, 1952. At the time of arraignment, Mr. Richard A. Goater, attorney, appeared for the defendant. Mr. Goater objected to a plea being made by the defendant, claiming that he wished to file a motion to quash the arrest or the warrant; that he did not want to waive any rights the defendant might have in the matter. The whole objection was entirely oral and not too definite as to what was desired. The court refused to pass upon an oral motion until the same was made definite. The court indicated that no advantage would be taken of the situation by plea or otherwise. The court suggested that the warrant be served; that the defendant enter a plea of "not guilty" and that the defendant be released on a nominal bond, which the defendant alone might sign. This was done and the case continued until February 19, 1952. It was suggested by the court that, in the meantime, a written motion might be filed and the matter passed upon in the usual manner.

On February 11, 1952, the defendant filed his motion, which is called "Motion to Quash Affidavit and Warrant." With the motion there is an "Affidavit" of the defendant and there is also filed "Memorandum in Support of Defendant's Motion." The motion, affidavit and Memo are all bound together in one manuscript cover. The affidavit, although bearing no file marks, will be considered as filed.

Although the motion is one to quash the affidavit, counsel for the defendant agrees that the motion is really a plea in abatement.

An affidavit charging an offense is the first step in bringing a misdemeanor before the court.

Chapter 18: Service of Indictment and Exceptions, is part of the Code of Criminal Procedure in Ohio. The chapter refers to indictments and not to affidavits. However, defects in affidavits are raised in the same manner as defects in indictments. This chapter outlines the procedure. After an indictment is found a reasonable time is allowed the defendant "to examine the indictment and prepare exceptions thereto." (Sec. 13439-4 GC.)

Under §13439-5 GC: "The accused may except to an indictment by first, a motion to quash; second, a plea in abatement and third, a demurrer." A plea to quash is "made when there is a defect apparent upon the face of the record." (Sec. 13439-6 GC.) Since there is no such defect apparent, a motion to quash does not prevail. But "a plea in abatement may be made when there is a **defect in the record shown by facts extrinsic thereto. (Sec. 13439-7 GC.)** Because the defect, if any, must be shown by evidence outside the record, that is, shown by affidavits which detail certain facts, we do conclude that the remedy is a plea in abatement, and it will be considered thus.

Defendant's motion, or plea, consists of three grounds which blend more or less into one contention, namely, that the arresting officer, a member of the police force of the City of Piqua, had no right to arrest the defendant, without a warrant, for a misdemeanor committed within the City of Piqua, which misdemeanor the defendant was "found violating"; the arrest of the defendant having been made within less than five minutes, by the police officer who observed the offense, the arrest having been made outside of the City of Piqua, but in an unincorporated village of Springcreek Township, one of the townships of the Piqua Municipal Court's territorial jurisdiction.

Defendant contends that (1) the arrest was illegal and void **ab initio;** that (2) the arrest was illegal and void or voidable because the defendant "was detained under arrest an unreasonable time after his arrest" without a warrant before being brought before the court and that (3) "the warrant was served on defendant while he was in protective custody * * * *"

This brings us to a question of facts as to parts (2) and (3) of defendant's plea. Part (1) is a legal conclusion of the

defendant or a question of law which will be noticed after parts (2) and (3) are disposed according to the evidence contained in the affidavit of the defendant and counter-affidavits of the State of Ohio.

Officer Zimpher, the arresting officer, states in his affidavit that on Monday night, February 4, 1952, at about 11:45 P. M. he was on foot patrol on North Main Street, the principal business street of the city—U. S. Route 25, Dixie Highway, is on this street—that he was on the southeast corner of Main Street and Greene Street; that he heard an automobile approaching from the south at a rapid rate of speed estimated to be in excess of 45 miles per hour—by ordinance this is a 25 mile zone—that the approaching automobile was being driven without a muffler, or with a defective one; that the defendant, who was known to the officer, when he reached Greene Street, swerved his automobile out of the line of its course; that the officer saw the above named facts, all of which are violations of the state law and the city ordinances and, that in good faith, believing that the defendant was operating his vehicle while "under the influence of intoxicating liquor" called by phone the police headquarters, at 11:46 P. M., using the telephone at the Patio, distant about 150 feet from Main and Greene streets; that the police cruiser arrived at Main and Greene Streets at 11:47 P. M.; that the cruiser with Patrolman Zimpher and three other officers, arrived at the home of the defendant in Rossville at 11:49 P. M.; that the defendant had gone into his home, but had not removed his coat and hat at the time the officers arrived; that the defendant's breath smelled of alcohol and he was asked to accompany the officers to headquarters for a drunk-o-meter test. The test showed a blood-alcohol content in excess of the amount considered safe for driving. The times set forth herein appear on the "log" kept in the police department, by Officer Sauers, who was on duty that night.

The affidavit filed by the defendant is substantially the same as that of Officer Zimpher. However, he states that he passed Greene Street on Main Street at about 11:25 P. M. He states that the officers arrived at his home at 11:45. The "log" shows that the officers left defendant's home at 11:51 P. M. At most, according to defendant's evidence, only 20 minutes elapsed between the violation at Main and Greene Streets and the arrest at defendant's home. According to the police "log" only 3 minutes elapsed.

The elapsed time becomes important when we refer to cases on "continued" pursuit.

Now, the defendant complains that he was detained too

long without a warrant. He refers to Rule 26 of this court. The cases will show that length of detention must vary with the circumstances of each case. What are the circumstances? What practical rules are necessary to operate this court?

The facts are that Officer Zimpher on February 4, was on duty from 11:00 P. M. to 7:00 A. M. Even a police officer must sleep. The police department has a form called "Report for Affidavits." The arresting officer fills in whatever is necessary information to procure an affidavit. This was done in this instance. Rule 19 of this court provides that the Director of Law, that is, Mr. Keyt, shall draw all affidavits. In practice, some member of the Police Department takes the "Report for Affidavits" to Mr. Keyt's office where the affidavit is prepared. If the officer is not on the 11:00 P. M. to 7:00 A. M. trick, the arraignment is usually at 10:00 A. M., which according to Rule 26 is the "preferred" time. But out of consideration for the officer's rest, the court always considers an arraignment at 3:00 P. M. proper. That was this case.

Therefore, parts (2) and (3) of defendant's plea in abatement is insufficient on all the facts of the instant case.

We shall now investigate the proposition of law raised in part (1) of the defendant's plea. Defendant's attorney is to be commended in raising this very question, because our own observation shows that it is easy to violate rights of those who are only accused of breaking the law. Not all persons who are arrested are guilty. So often it becomes necessary to examine anew some of the laws' fundamental concepts, never forgetting the presumption of innocence or man's equality under the law. It is with this thought, that we made more research than the problem might seem to merit.

## STATUTORY LAW

"Sec. 13432-1 GC. Officer may arrest on view. A sheriff, deputy sheriff, marshal, deputy marshal, watchman or police officer, herein designated as "peace officers" **shall arrest** and detain a person **found violating** a law of this state or any ordinance of a city or village **until** a warrant can be obtained.

"A constable **within the limits of the township** in which said constable has been appointed or elected, shall arrest and detain a person **found by him in the commission of a misdemeanor**, either in violation of a law or an ordinance of a village, until a warrant can be obtained."

Let us look at the history of this §13432-1 GC. It now appears in two paragraphs. The first paragraph was Section 21 of Ohio's first Code of Criminal Procedure. 66 Ohio Laws 305. This paragraph became R. S. 7129. Then it became **Section 13492 (113 Ohio Laws 123)** which was parts of the

present Ohio Code of Criminal Procedure. Effective October 18, 1933 (**115 Ohio Laws 530**) the second paragraph was added and became a part of the present Code.

First, let us paraphrase paragraph one, of **§13432-1 GC**, as follows:

"A * * * police officer * * * **shall arrest and detain** a person **found violating** a law of this state, * * * **until** a warrant **can be obtained.**"

The word "shall" is mandatory, as the cases to be cited will show. It is mandatory both to **arrest** and to **detain.** Arrest whom? The answer is "a (any) person found violating" a law of the state. How long shall the person be detained? The answer is "until" a warrant can be obtained. It does not say that a warrant must be obtained at once, but until it **can be obtained.** See State v. Lewis, **infra.**

The first paragraph refers to laws of the state, which includes both felonies and misdemeanors. The second paragraph refers to misdemeanors only.

Turning to the second paragraph of this section, let us paraphrase it:

"A constable, **within the limits of the township** * * * **shall arrest** and detain a person found "committing a misdemeanor."

Here, in the second paragraph is a distinct limitation to the township on the part of the constable. There is no limitation applicable to any officer named in the first paragraph. Hence, there is no limitation upon such officers, whereby they are confined to any particular territory, so long as it is within the State of Ohio.

In statutory construction, there is a Latin maxim "**Expressio unius est exclusio alterius**" meaning "The mention of one person or thing is the exclusion of another." Black's Law Dictionary. See **State v. Guilbert, 75 Oh St 45; Beilstein v. Hugonin, 145 Oh St 397-400** and Ironton Cross Tie Co. v. Rd. Co. 10 N. P. (n. s.) 416.

As we hereafter refer to two cases, one from Massachusetts and one from Indiana, we cite Comparative Legislation as regards §13432-1 GC as follows:

Massachusetts: Gen. Law. Ch. 276, Sec. 28 (1932)

Indiana: Burns' Statutes, Sec. 9-1024 (1933)

## OHIO CASES ON THE QUESTION

There are a number of cases in Ohio on the question here involved, which we shall notice in some factual detail sufficient to present the problem. The cases (six of them, are by the Supreme Court and one by the Court of Appeals) are arranged in the Order of their decision. They are as follows:

1. **Wolf v. State of Ohio, 19 Oh St 248 (1869).** This case arose in Muskingum County, Ohio. The defendant, Wolf, was the Marshal of the City of Zanesville. One named Lee engaged in the alleged operation of a house of ill-fame, where algamation of the races was believed to have taken place. The above conduct was, if true, a violation of the state law. Wolf, without a warrant, accompanied by other officers, attempted to make an arrest of Lee who resisted arrest. In the opinion of the court, it is said:

"* * * that the official character of the accused (Wolf, the arresting officer and present defendant) was known to the deceased (Lee); that he (Lee) knew the cause of the attempted arrest, though the officers gave him no notice thereof; that he (Lee) forcibly and by reason of firearms resisted arrest; that the deceased (Lee) was shot and killed by the accused (Wolf) while he was attempting to apprehend him."

The State of Ohio claimed the attempt to arrest Lee was unlawful unless he was notified of the charge against him. The court so charged. This was held to be error.

We again quote from the opinion by Judge Day as follows:

"It is also provided by the 21st. section of the criminal code, that every sheriff, marshal * * * **police officer shall** arrest and detain any person **found violating** any law of this State, * * * until a legal warrant can be obtained. **66 Ohio Law 291.**" (Emphasis is ours.)

The court said: "There was at least evidence **tending** to prove that Lee was "found violating" the act * * * and if that was so, he (Lee) might be lawfully arrested by the proper officer, without a warrant."

Judge Day says the question "turns upon the mode of arrest",* * * that the offender must be * * * **"found violating the law."**

The lower court was in error in its charge to the jury aforesaid.

The Wolf case, **supra**, as quoted above, refers to the phrase, **"found violating"** a law of the state, that is "found violating" by a police officer, a law of the State. This phrase is found in the original Criminal Code of Ohio, as hereinbefore indicated. "Found violating" is synonymous with "in the act of committing an offense against." See Wolf case, **supra**, at page 258. Both phrases have their origin in the common law relating to criminal procedure.

2. In chronological order, the next case in Ohio is **Eichenlaub v. State, 36 Oh St 140 (1880).** Judge Okey, in the opinion at page 143, speaking of the power to arrest, says:

"Nor do we deny the power of officers, and even private

persons, to arrest criminals under some circumstances, **without warrant (66 Ohio Law 291)**; or charge on oath or affirmation. This power is recognized in our statutes, has long existed, and is not prohibited by any constitutional provision. But these statutes provide in effect, that the person so arrested can only be detained "until a legal warrant can be obtained; and such warrant can only be issued on oath or affirmation."

This case decided that an arrest may be made without a warrant, but the accused can only be detained **until** a warrant is obtained. This is important mainly in referring to Sec. 21 of the original Criminal Code of Ohio, that is, **66 Ohio Laws 291**, where the phrase "found violating" appears.

3. The next case to be decided by our Supreme Court, which construes R. S. 7129—formerly Sec. 21 of original Criminal Code—, is the case of **Ballard v. State, 43 Oh St 340.**

We shall paraphrase Section 7129, Revised Statutes, as follows:

"A sheriff * * * **marshal** * * * **police officer, shall** arrest and detain any person (found violating any law of this state) * * * until a legal warrant can be obtained." (Emphasis is ours.) Parenthesis is the emphasis of Judge Johnson's opinion in the Ballard case.

In the Ballard case, the arrest was attempted by the marshal of the village of Wilmington, Ohio. In the present case, the arrest is made by a police officer. Both of these officials, with other officers, are named in the statute as it then read. It still reads the same as you will observe above.

We quote in full syllabus "2" in the Ballard case, **supra,** as follows:

"Under a proper construction of these sections (R. S. 1849 and R. S. 7129) a **marshal** of a municipal corporation **is authorized, without warrant,** to arrest a person found on the public streets of the corporation carrying concealed weapons contrary to law, **although** he has no previous personal knowledge of the fact, (if he acts **bona fide**) and upon such information as induces an honest belief that the person arrested is in the act of violating the law." (Emphasis is ours.)

The opinion concludes: "The accused * * * was **found violating** a law of the state, within the terms of 7129." (Emphasis is ours.)

4. **Reinhard v. City of Columbus, 49 Oh St 257 (1892)** is the next important case. This is a civil case, not a criminal case, in which the accused, who had been arrested, **without warrant,** for a misdemeanor, deposited money in lieu of bail for his appearance. While money was still in hands of the

city, the accused made demand for the money which was refused him. This suit is to recover the money from the city.

Judge Dickman refers to the 21st Section of the original criminal code, which we paraphrased above. The court cites section 142 of the municipal code, which provided that the city marshal "shall arrest any person in the act of committing an offense * * *."

We quote the following from the opinion:

"By these two sections statutory power is conferred upon **officers named** to arrest, without warrant, and to detain, for a limited time, to the end **that there may not be a failure of justice through the escape of criminals.** But the officer, if not armed with a warrant, has no authority to arrest unless the persons are "found violating" or are "in the act of committing an offense against" a law of the state or an ordinance of a city or incorporated village.

"The record" says the court, "does not disclose that plaintiff (defendant in the criminal case) and his companion were "found violating" or "in the act of committing an offense against any law or ordinance, or that the officer in making the arrest **acted upon knowledge or reliable information** which proved to be true. **Ballard v. State, 43 Oh St 340.**" (Emphasis is ours.)

5. Counsel for the defendant relies heavily on the case of **State v. Lewis, 50 Oh St 179 (1893).** Lewis was marshal of the village of Hillsboro, Ohio. He attempted to arrest one Elliott for a misdemeanor, without a warrant. In doing so, the marshal killed Lewis. The defendant-marshal was indicted for murder in the second degree. The syllabus of the case is sufficient to show the fact and the decision. It reads in part as follows:

"If * * * the officer was **absent** when such offense was committed, **and did not appear** there **until after** the affray had ended, public order restored, and the guilty parties had departed from the vicinity, and all the information the officer had of the affray and the parties to it, was the statements of bystanders who witnessed it, he has **no authority in law to pursue** and arrest the persons charged with the offense without first obtaining a legal warrant therefor." (Emphasis is ours.)

In short the marshal's information was pure hearsay. Hence, he had no right to pursue.

Chief Justice Bradbury who wrote the opinion, concluded:

"Section 7129 R. S. provides for the arrest of persons "found violating" a law or ordinance. Found by whom? The statute

does not expressly declare; but when the rules of the common law upon this subject are considered, it is clear that the legislature meant, **found by the officer** who attempts to make the arrest."

One other proposition is pertinent here, which says:

"Even where such offense has been committed **in the presence of an officer,** his power to arrest the offender without warrant should be **promptly exercised** or it will be lost. Am. & Eng. Ency. of Law, 784 * * *."

"In one case," the court says: "It was held that the officer must **proceed at once** in the matter, and follow it up until arrest is accomplished and delay of five hours are fatal to the authority."

It was declared that "there was no continued pursuit of the prisoner."

The instant case is one of prompt and continuous pursuit until the arrest is accomplished. More when we come to cases from other jurisdictions.

6. The case of **Conrad v. Lengel, 110 Oh St 532** (1924) decided that detention of the accused "for the period of one hour without warrant is not unreasonable." The arrest was for committing a misdemeanor. (Peddling without a license.) The question arose on a demurrer to the answer of the arresting officer.

Judge Matthias, who wrote the opinion, said:

"Under the averments of the answer the plaintiff was **found violating** the ordinance by the police officer, and the officer was authorized by the provisions of §13492 GC, (now §13432-1 GC), to make the arrest, without warrant, and certainly it **cannot be determined as** matter of law that detention of one hour is an unreasonable time."

This case decided that the period of detention is not a matter of law, but is one of fact, depending upon all the facts and circumstances of each particular case.

7. **Clark, Admr. v. Carney, 71 Oh Ap 14** (1942) M. C. O. is a civil case for damage arising for death by wrongful act. (**Sec. 10509-166 GC.**) The facts are that a police officer discovered four men robbing a bakery. Upon demand, they refused to halt. One of the robbers was shot. Hence, the suit for excessive use of force.

Judge Ross decided that the officer was not liable. After quoting §13432-1 GC, the court said:

"The statute law of this state **makes it a mandatory duty** upon the police officer to arrest a person **found violating** the law of the state."

Although the above case is a felony, the statute does not make any distinction where a misdemeanor is involved.

Without comment, we cite the following cases to the same effect as those mentioned already, namely: Billington v. Hoverman, 18 C. C. 637; Ringhand v. Grannan, 12 C. C. (n. s.) 255; Dunning v. Cincinnati, 21 N. P. (n. s.) 468 and State v. Page, 7 N. P. 543. See **Blockman v. Cincinnati, 18 O O 129** (C. P.)

In anticipation of an objection hereafter to the use of a drunk-o-meter in the instant case, we quote syllabus 3, of Dunning v. Cincinnati, **supra:**

"3. The forcible taking by the officer from the accused of such papers thrust into his pocket is within the authority of the officer, and is not in violation of the constitutional right of the accused against unlawful search and seizure."

We might add that it is not compulsory self incrimination.

### TEXT AND CASES FROM OTHER JURISDICTIONS

It is argued by the defendant's attorney that there could be no lawful arrest in this case, because, at the time of the arrest, the defendant was no longer driving his automobile and already had arrived at his home. We would infer an admission on the part of the defendant that an arrest **could be made lawfully,** if made during the time the prohibited act was being committed. This argument seems to have its basis upon the common law concept "that a peace officer may, without a warrant, arrest any person who is committing or attempting to commit a misdemeanor in his presence." (C. J. S. **Arrest,** Sec. 6)

At common law, an arrest for a misdemanor cannot be made without a warrant unless it also involves a breach of the peace. The term "breach of the peace" is defined as "something more than that which used to be alleged in indictments and complaints as a legal incident of every criminal offense." Commonwealth v. Gorman, 192 N. E. 618-620.

The Gorman case, **supra,** relies upon the case of U. S. v. Hart, Fed. Co. No. 15,316, Pet. C. C. 390, wherein Washington, J. held: "that driving a carriage at an immoderate rate of speed through a principal street was a breach of the peace, justifying an arrest by a constable without a warrant."

"Voluntary drunkness in private, though a crime (Commonwealth v. Conlin, 184 Mass. 195, 68 N. E. 207) is not of itself a breach of the peace."

In State v. Deitz, 136 Wash. 238, 239 P. 386, it was held that driving without lights was not a breach of the peace, "the right to arrest without a warrant exists nevertheless."

The case of Dailey v. State, 194 Ind. 683, 144 N. E. 523 was a case which, in Ohio, we would call "being in actual physical

control of a motor vehicle while under the influence of intoxicating liquor," yet the Sheriff could make lawful arrest, although there was no element of breach of the peace, and without a warrant.

Under Section 6, of C. J. S. **supra**, a collection of cases is made under a paragraph called "Particular Offenses," where it is stated:

"In accordance with the rules just announced, under appropriate statutory provisions, a peace officer may arrest without a warrant, one who, in his presence, is violating a law relating * * * to "driving an automobile on a public highway while intoxicated." Citing the Gorman case, **supra**. Many other offenses, none of which involve "breach of peace" are listed, including speeding and reckless operation of a motor vehicle."

As respects the argument that the offense in the present case, no longer continued up to the time of arrest, we quote syllabus 2 of the Gorman case, **supra**:

"State police officer, having a common law authority of a peace officer, in absence of statute, may arrest **without warrant** for misdemeanor, which involves breach of peace, if committed in presence or view of officer, and still continuing at time of arrest or **only interrupted**, so that the offense and arrest form parts of one transaction."

The facts and procedure in the Gorman case, are so much like the present case, that we refer to it at length. In that case there was no warrant, although Gorman had been placed in custody but gave bail for his appearance.

We quote from the opinion of Judge Lummus, second paragraph, as follows:

"In the District Court, before pleading to the merits of the complaint, the defendant made a motion to quash the complaint and also filed a "plea to the jurisdiction" based on the alleged unlawfulness of the arrest and of "the procedure in bringing him before the court." These were overruled and the defendant was convicted. On appeal to the Superior Court, he renewed the motion and the plea. These were again overruled and after trial a verdict of guilty was returned.

Again we quote, omitting citations of authority from the fifth paragraph of the opinion in the Gorman case, as follows:

"(2) The offense of operating a motor vehicle while under the influence of intoxicating liquor (same as the Ohio statute) is classified by our statute as a misdemeanor. (Also a misdemeanor in Ohio.) A police officer, in the absence of statute,

may arrest without warrant for a misdemeanor which (1) involves a breach of peace (2) is committed **in the presence or view of the officer** and (3) is still continuing at the time of the arrest or **only interrupted** so that the offense and the arrest form parts of one transaction."

The opinion discussed and decided that a breach of the peace, justifying an arrest without warrant, "may be prospective or an anticipated one."

The judge relied upon the dictum of the English case, Trebeck v. Croudace, 1 K. B. 158, 166 (1918) wherein it is said:

"From the very nature of things the arrest of a drunken person in the street may very frequently be justified on the ground of **an anticipated breach** of the peace particularly so when the alleged offender is in charge of * * * a motor vehicle * * * a very dangerous instrument from the point of the view of the public safety when in the hands of a drunken person."

The defendant in the Gorman case, **supra,** tried to distinguish between being "drunk" and being "under the **influence of** intoxicating liquor."

Judge Lummus, of the Massachusetts court said there was no distinction between the two degrees of intoxication, and added:

"But even that **milder degree of alcoholic effect** is likely to make an operation of a motor vehicle a public menace and induce in him such reckless conduct as may make him criminally responsible for unintended assault and even manslaughter (citing cases). In our opinion, the offense involves a breach of the peace, and justifies an officer in arresting without a warrant a person he sees in the act of committing it."

Section 6307-18 (a) of The Uniform Traffic Act of Ohio makes an unintentional killing of another person manslaughter in the second degree (while engaged in the violation of any law of this state applying to the use or regulation of traffic)." Thus, the Ohio law is the same as the law of Massachusetts.

The defendant in the instant case, was placed in custody because he was "found violating" a law of the State of Ohio, namely, for violating §6307-19(a) **GC,** which in part, reads as follows:

"No person who is under the influence of intoxicating liquor * * * shall operate any vehicle * * * within the State of Ohio."

According to the counter-affidavit of Patrolman Zimpher, the defendant is alleged to have operated his motor vehicle on Main Street of this city in the presence and view of

Patrolman Zimpher. The defendant was "found violating" a law of the State of Ohio, it being made to appear that the defendant, at the time and place, was operating his vehicle in a reckless and' abnormal manner, thereby endangering the lives and property of the citizens. Perhaps less than three minutes elapsed between the alleged violation and the time the defendant was placed in custody. Certainly, under Rule Three (3) the offense and the arrest "form parts of one transaction." The evidence shows that the defendant had driven less than one mile. There is here no interruption which would preclude the defendant's arrest without a warrant.

When could the arrest be made? This question is answered in the text of 6 C. J. S. **Arrest**, at page 590, in the paragraph entitled "Time of making arrest." We quote:

"While peace officers are authorized to arrest **without a warrant** for an offense **less than a felony** committed in their presence, it is usually held that in order to be valid the arrest must be made at the time of the offense, or any part of the offense, is being committed, or **within a reasonable time thereafter,** or upon **fresh and immediate pursuit** of the offender. Under some statutes a village police officer may, upon the violation of a village speed ordinance in his presence, pursue the offender and arrest him **outside the village** limits without a warrant." (Emphasis is ours.)

See 4 Am. Jur. **Arrest**, Sec. 67. Oleson v. Pincock, 68 Utah 507, 251 P. 23 and 5 C. J. p. 406 note 23, Reed v. State, 195 Ga. 842, 25 S. E. (2nd) 692.

Note 23 of 5 C. J. aforesaid cites a large number of cases from many jurisdictions, as to what period of delay in making an arrest for misdemeanor, without a warrant, is reasonable and unreasonable. In the entire list of cases cited, there is no time mentioned as short as in the instant case. All the cases hold that the officer must be "allowed a reasonable time and fit opportunity" in which to make the arrest.

The case of Curry v. Commonwealth, 199 Ky. 90, 250 S. W. 793 is a case in point. It is said that the fact that during the pursuit of an intoxicated driver there was a period of time in which he was out of sight of the officer does not invalidate the subsequent arrest by such officer when he overtook the offender, and the further fact that the accused was **detained in a neighboring town** at the telephoned request of the pursuing officer, would not make the arrest unlawful," even though the act of detaining accused until the officer arrived was illegal.

Let us assume that the arrest was unlawful—which we deny—what difference does it make in the criminal case now

before the court. There is abundant authority that it does not make any difference. Surely, the defendant does not claim that he should be dismissed upon the merits of the case even without a hearing, because he was arrested, unlawfully, he claims.

Returning again the Gorman case, **supra,** syllabus 4 reads as follows:

"Where motorist, arrested for operating automobile on highway while under influence of liquor, was **physically before Court** on complaint, **regardless of reason, invalidity of original arrest was immaterial.**"

The Court cites and quotes, with approval, Mr. Justice Holmes in Michigan Trust v. Perry, 228 U. S. 346, 57 L. Ed. 867, as follows:

"Ordinarily jurisdiction over a person is based on the power of the sovereign asserting it to seize that person and imprison him to await the sovereign's pleasure."

The court in the Gorman case, at page 621, of the N. E. report says:

"When the court has **jurisdiction over the case,** and the defendant is **physically before the court** to answer to the plaintiff a possible view is that the **unlawfullness** of the arrest that brought the defendant there is **immaterial** in that case, and the court will proceed to try the merits, leaving the defendant to his remedy of an action against the arresting officer. This view has been taken in some jurisdictions even in civil cases."

Continuing:

"Even though the view just stated be not taken in civil cases, it may nevertheless be adopted in criminal cases. The latter concern directly the public peace and order, and are prosecuted by the Commonwealth to which the wrong doing of its officer cannot be attributed."

Commonwealth v. Toy, 170 Mass. 192, 48 U. E. 1086, in the opinion, the court said:

"In our opinion the court had jurisdiction to try the complaint, **whether** her original **arrest was illegal or authorized by law.** If she was illegally arrested, she had her remedy by action for that wrong; and the illegal arrest did not prevent the court from acquiring jurisdiction to try the complaint."

To the same effect, see syllabus 2 of Commonwealth v. Conklin, 184, Mass. 33, 68 N. E. 207.

This is the law of Ohio. If the arrest is illegal, the accused has a remedy against the arresting officer and his bondsmen. **3 O. Jur. Arrest, pg. 174, Sec. 39,** Officer's Liability.

Defendant's attorney relies upon the opinion of Thos. J.

Herbert, Attorney General of Ohio—later Governor—in his opinion to Col. Lynn Black, of the State Highway Patrol, dated August 22, 1939, and found in 1939, Attorney General Opinions, Vol. 2, page 1547 to 1557.

The syllabus of the opinion is as follows, paragraph one:

"Syl. 1. A village marshal may not arrest without a warrant any person whom he finds violating the laws relating to motor vehicles outside the limits of the village in which he is elected, where such violation amounts only to a misdemeanor."

The opinion furnished to Col. Lynn Black, Supt. of State Highway Patrol on August 22, 1939:

"Dear Sir:

"Your recent request for my opinion reads as follows:

"The State Highway Patrol has found a practice existing in certain parts of the State, **wherein certain village marshals make deliberate patrols outside their villages,** for the purpose of making arrests and taking the offenders into any court in the county they desire."

That was the problem to which the opinion related. It is the old "speed trap" procedure, being operated by the village marshal for state-fee costs, **outside** the marshal's village. It was a matter of making arrest for profit.

After quoting §§4386 and 13432-1 GC, the opinion says:

"Neither of these two sections **places any territorial limits** upon the power of a village marshal to make arrests without a warrant in cases of misdemeanor. However, **as a general rule**, a peace officer has no authority to make arrest without a warrant outside his territorial jurisdiction * * *. (Emphasis is ours.)

The problem posed in the opinion of General Herbert to Col. Black is distinguished readily from the instant case. In the opinion cited, the marshal made "deliberate patrols" on the highway "outside" his village, where he sought his victim and where he made the arrest. In the instant case, the defendant was "found violating" the state law inside the City of Piqua. The arrest was made beyond the city limits after continuous and uninterrupted pursuit of the offender as part of one transaction, which had its inception in the city and in the presence of the police officer. The two situations are far apart legally.

Therefore, in conclusion, we feel compelled to overrule defendant's plea in abatement, upon the state of facts existing in this case—facts easily distinguishable from any other Ohio case with which we are informed.

That similar problems may be avoided in the future, we

respectfully admonish all peace officers in making arrests for misdemeanors, without warrant, not to do so, unless the offender is "found violating" the state law or city ordinance, in his presence or to his knowledge; that the arrest, under these circumstances, should not be made upon the hearsay testimony of bystanders as to what happened in the absence of the officer and after the alleged offense had become fully accomplished.

Let the defendant save his exception in an entry over-ruling his plea and the cause will proceed upon its merits.