CITY OF DAYTON, APPELLEE, *v.* THOMAS, APPELLANT.*
(Two cases.)

(Nos. 2710 and 2711—Decided January 11, 1963.)

*Mr. Herbert S. Beane,* law director, *Mr. Henry W. Phillips* and *Mr. Fred M. Izenson,* for appellee.
*Mr. Clarence Thomas, in propria persona.*

CRAWFORD, P. J.   Defendant, appellant herein, was found guilty by a jury and sentenced in the Dayton Municipal Court on two charges of assault against two men, Lieutenant Hockaday and Fireman Engle of the Inspection Bureau of the Division of Fire.   The judgments were affirmed by the Court of Common Pleas and are now here on appeals on questions of law.
  These two members of the Division of Fire testified that

*Motion to certify the record overruled, July 3, 1963.   Appeal dismissed, 175 Ohio St., 179.

they had been on routine inspection duty in the vicinity of a double house known as 222-224 Proctor Street and had, according to their testimony, come to that address and made inquiry as to the person in charge. Shortly thereafter, the defendant, Clarence Thomas, appeared. He was a contractor who was making some repairs on the house for the owner. There is some discussion in the briefs about whether an inspection was actually being made, and if so whether it was lawful, etc., but these matters are not in issue.

There are ten assignments of error embodying three principal complaints: (1) that the ordinance under which defendant was charged is invalid; (2) that the court improperly denied a continuance; and (3) that defendant was refused access to documents in the hands of the prosecutor.

The charge was framed under Section 943-2 of the Code of General Ordinances of the City of Dayton, which provides:

"Whoever unlawfully assaults or threatens in a menacing manner, or unlawfully strikes or wounds another, shall be fined not more than one thousand dollars ($1000.00), or imprisoned for not more than one (1) year in the city workhouse, or both."

Prior to the passage of this ordinance by the city commission, it was read by title only; not in full. It is claimed that this circumstance renders its enactment invalid. It is true that Section 731.17, Revised Code, requires a full distinct reading on three different days, unless such reading is dispensed with by a three-fourths vote of the legislative authority. However, Dayton is a charter city. Sections 3 and 7 of Article XVIII of the Ohio Constitution and Sections 701.05 and 731.45, Revised Code, adopted pursuant thereto, empower a charter city to enact ordinances in accordance with the procedure provided or authorized by its charter, and empower its legislative authority to determine its own rules.

Sections 40, 41 and 42 of the charter of the city of Dayton, which prescribe legislative procedure and the method of enacting ordinances, do not contain any requirements as to reading them. Section 39 empowers the commission to determine its own rules. The commission, accordingly, adopted Rule 9 which provides in pertinent part simply that "Every ordinance or resolution * * * shall be read at the meeting when it is introduced * * *."

It has been argued that the reading thus required is the same as that specified by Section 731.17, Revised Code. We are unable to follow that interpretation. The rule itself does not specifically so provide. And the rule has been otherwise reasonably interpreted from the beginning, with the result that the orderly processes of government require that this reasonable and long-accepted interpretation be not overturned. See *Miami Conservancy District* v. *Bucher*, 87 Ohio App., 390. This court has recently (January 24, 1962) touched upon this question in *City of Dayton* v. *Woodgeard*, 116 Ohio App., 248.

It has been held further that a city council's departure from its own rules in adopting an ordinance will not in and of itself render the ordinance illegal or void. *Humphrey* v. *Youngstown*, 75 Ohio Law Abs., 239.

The court has wide discretion in ruling upon an application for a continuance. And it is only in cases of abuse of that discretion that the reviewing court may interfere. Whether there is such abuse depends upon the circumstances.

The two charges here were filed on August 29, 1956, charging defendant with simultaneous offenses on that day. There was a long series of continuances, including at least nine assignments for trial, over a period of more than three years. The record shows no complaint by defendant on account of these continuances, although the court stated that they were not all chargeable to him. The defendant was represented from time to time by a succession of different attorneys. The last of these in the Municipal Court was William H. Davis who represented him at the trial on November 18 and 19, 1959, and conducted his defense. Defendant is now purporting to represent himself. He claims in his brief that Davis was employed only for the purpose of securing a continuance. We have discovered no direct statement to that effect by Davis, who did say that he was employed only a few hours before the trial and had inadequate time for preparation.

On the day the trial began, Davis moved for a continuance before the jury was impaneled. He did not then state his reasons in the record, although the court invited him to do so. He indicated merely that he had discussed the matter in chambers. After the jury was impaneled, the jurors were temporarily excused and Davis then stated in the record for the first time

his reasons for requesting a continuance. Referring to an attorney other than himself, he said:

"The reason, the attorney for the defendant is ill and unable to conduct this hearing, and none of the subpoenaed witnesses on defendant's behalf have appeared."

The court responded:

"Let the record show that the court was advised of the reasons for the request of the continuance and feeling that the request was unseasonably made and that the matter has been set for disposition several times before the court, the court feels that the interests of justice will best be served by requiring the trial continue forward at this time. Overrule the motion for a continuance."

There was no affidavit filed as to what defendant expected to prove by any missing witnesses or what acts of diligence he employed to procure their testimony. The record reflects the full co-operation of the court in obtaining witnesses for whom defendant had subpoenas issued. Certain witnesses were subpoenaed and testified for him.

With respect to the claim that defendant's counsel was ill and unable to attend the trial, a colloquy occurred between the court and Davis on November 25, 1959, upon hearing of an application for reconsideration of a motion for a new trial. From this it appears that between 10:00 and 11:00 p. m. on the night before the trial, the defendant telephoned the court and requested a continuance, which the court unequivocally denied; that approximately two hours thereafter, around 12:00 midnight or 12:30 a. m., a telegram was read over the telephone to the court from a Stanley Denlinger of Akron, Ohio, requesting a week's adjournment of the trial because of his illness.

After mentioning some of defendant's prior attorneys, the court observed:

"* * * and now this nebulous attorney whom the court has never been introduced to from Akron has been interjected into the matter * * *."

Then, under careful questioning of the defendant, it was developed that his connection with Denlinger was remote.

The record indicates that the court practiced commendable patience and committed no abuse of discretion in refusing to grant a further continuance. See 11 Ohio Jurisprudence (2d), 168, 177 and 180, Continuances, Sections 2, 12 and 15.

Defendant complains that he was denied access to papers and documents in the possession of the prosecutor pertaining to the case, especially a statement allegedly made by himself. The record does not reflect any demand, motion, notice or order of the court as provided in Section 2317.33, Revised Code, which section is made applicable in criminal cases by Section 2945.41, Revised Code. No such statement was offered in evidence, nor does it appear that it was used in the examination of witnesses. No other document was specifically referred to, and none was offered in evidence by the prosecutor.

In *State* v. *Sharp*, 162 Ohio St., 173, the Supreme Court said in paragraph three of the syllabus:

"In a criminal prosecution, defense counsel is not entitled to see and examine a purported written statement, admission or confession of the accused taken by and in the hands of the prosecuting attorney before trial."

On page 184, in its opinion the court said:

"Our courts have uniformly held that the defendant is not entitled to a copy of an alleged confession in the hands of the prosecuting attorney before trial. But 'if the prosecuting attorney, after proof that the confession in his possession was signed by the defendant, should offer it as evidence tending to establish proof of guilt, *or should examine a witness in relation thereto*, defendant's counsel could then make a demand for it, and it would be the duty of the court to submit the written confession for inspection by counsel * * *.' "

Some other matters are urged in the assignments of error and briefly touched upon, all of which we find to be without merit. A motion to quash the affidavits was overruled. We perceive no defect apparent on the face of the affidavits or the record at that point. See *State* v. *Marshall*, 61 Ohio Law Abs., 568. The basis of the motion was the failure to read the ordinance in full, which subject has already been dealt with.

Other complaints of misconduct of the prosecutor, inadequacy of the evidence, errors in the charge of the court, etc., are not supported by the record.

No error prejudicial to the defendant appearing in the record, the judgments will be affirmed.

*Judgments affirmed.*

KERNS and SHERER, JJ., concur.