STATE *v.* FOSTER ET AL.

(Nos. A-232421, A-232424 and A-232422—Decided October 2, 1969.)

Common Pleas Court of Hamilton County.

*Mr. William B. Singer,* for plaintiff.
*Mr. Leonard D. Slutz* and *Mr. David A. Caldwell,* for defendants.

BETTMAN, J.  These cases are before the court on the prosecution's motion to dismiss defendants' appeals, grounded on the proposition that under Section 4(B), Article IV, Constitution, as amended effective May 7, 1968, this court no longer has appellate jursdiction to review proceedings of the Municipal Court.  Counsel for appellants filed a very thorough brief in which they argue that the logic of the decision in *Stone* v. *Goolsby* (1969), 18 Ohio Misc. 105, which holds that Courts of Common Pleas do not have jurisdiction to review judgments of the Municipal Court under the Constitution, as amended, is incorrect.

Appellants' principal arguments are:

(1) Since no reference was made on the ballot to the change in the appellate jurisdiction of the Court of Common Pleas, such amendment was never properly voted on and is not effective.

(2) The so-called Modern Courts Amendment was in fact a number of amendments and therefore its adoption was in violation of Section 1 of Article XVI of the Constitution which provides:

"When more than one amendment shall be submitted at the same time, they shall be so submitted as to enable the electors to vote on each amendment, separately."

A conscientious analysis of the very fundamental problems raised by appellants can only lead one to the conclusionsion that Ohio's adoption of a long form of constitution was unfortunate.  Where, in order to accomplish needed reforms to keep the state abreast of the great changes which constantly take place in a society, it is necessary to go through the laborious procedure of a constitutional amendment, progress is difficult.  Accordingly, courts should be reluctant to undo that which has been done.

Underlying the specific issues before the court then is a fundamental question involving one's philosophy of government—how far should the judiciary go in negating the work of the legislative branch.  There is no question that it is the court's duty to interdict acts of the Legislature which are "unconstitutional."  However, it is equally apparent that in making this determination the court must show a proper respect for its co-ordinate branch of govern-

ment and must exercise proper judicial restraint. In other words, the Legislature is entitled to the benefit of the doubt and a court must be reluctant to declare its acts unconstitutional unless fundamental rights of the people are threatened.

Coming then to the specific issues raised herein, let us first discuss appellants' second point that the "Modern Courts Amendment" was submitted to the people in violation of Section 1, Article XVI, Constitution, requiring separate submission of "more than one amendment."

In *The State ex rel. Burton,* v. *Greater Portsmouth Growth Corp.* (1966), 7 Ohio St. 2d 34, this issue was raised. The court upheld the amendment permitting public aid to private corporations, despite the contention that it affected the provisions of several other sections of the Constitution, stating that the amendment "relates to a single purpose or object and all else contained therein is incidental and reasonably necessary to effectuate the purpose of the amendment." The doctrine laid down in the *per curiam* opinion was:

"The singleness of purpose or object sought to be accomplished by the amendment is the test as to whether it complies with such section."

However, in its decision in *The State ex rel. Foreman,* v. *Brown* (1967), 10 Ohio St. 2d 139, upholding the amendment establishing the Ohio Bond Commission, the Supreme Court broadened the test even more. Writing for the majority Chief Justice Taft said: "There is nothing in the Ohio Constitution that will support a reasonable conclusion that a single amendment to that Constitution proposed by the General Assembly can involve no more than one subject, purpose or object." The court held that Section 1 of Article XVI should not be construed as so limiting.

Chief Justice Taft's opinion states that a proposed amendment may embrace several subjects, the only limitation being that "each subject must bear some reasonable relationship to a single general purpose or object." He goes on to imply that courts must be liberal in interpreting what such a general purpose or object may be. This we must take then to be the law of Ohio, whatever theoretical arguments can be raised against it.

No one could seriously argue that the "Modern Courts Amendment" did not embrace a number of subjects. Nevertheless, the subjects included did have a reasonable relationship to the general object of improving the administration of courts. Certainly if we are going to be "liberal in interpreting what such a single purpose or object may be" we must so hold.

One could strongly argue, as does Justice O'Neill in his dissenting opinion that:

"It does not seem reasonable that a citizen should be asked to vote on a proposal containing four such sweeping, diverse and unrelated proposals, and be faced with a single choice that requires the voter to vote yes for all four of them, or no against all four of them."

However, it seems to this court that this returns us to the governmental philosophy question referred to above. This court feels that the peoples' interest will ultimately be better served if the judiciary does not shackle the Legislature's sincere attempts to meet modern problems. The correction of the evil, if indeed it is such as suggested by Mr. Justice O'Neill, should rest with those forces which operate upon the legislative body.

The other principal point raised by appellants is that the form of ballot did not properly describe, indeed did not even mention this particular point namely, the proposed reduction of the appellate jurisdiction of Courts of Common Pleas. This too is disposed of by the *Foreman case.* As there pointed out, there is no constitutional requirement describing how an amendment "shall be submitted to the electors." Accordingly, Section 3505.06, Revised Code, controls. This section provides that the text of an amendment need not be printed on the ballot but that the Secretary of State shall prepare "a condensed text that will properly describe the question, issue, or amendment."

The issue of what a "proper" text is, has been and always will be subject to disagreement and argument. Is the statement too long or too short, too technical, too argumentative, too ambiguous, too positive or too negative. Objections such as these can be raised to every abstract of a lengthy document.

Chief Justice Taft argues in his opinion, written for

the majority in the *Foreman case,* that since the full text of the amendment is published in the newspapers and posted in every polling place, the court will be most liberal in passing on a condensed text. Indeed, he goes on to quote language from a prior opinion, that "irregularities, which were not caused by fraud and which have not interfered with a full and fair expression of the voters' choice, should not effect a disenfranchisement of the voters."

It is true, as stated by Justice O'Neill in his dissent in *Foreman,* that "it is imperative that the voter be provided the opportunity to know what the proposal that he is being asked to vote for or against provides." The question is should he be expected to get that from the form of the ballot itself or can we not rely on our communications media to give us the pros and cons before we get to the ballot box. On analysis it seems clear that today the voter has a much better opportunity to make his determination on the basis of the advanced analysis and publicity every constitutional amendment gets than he is from the hurried perusal of a description on the ballot. The best one can really hope for from a ballot description is that it be sufficient to advise the voter of which of various amendments submitted at that particular election he is then voting on.

Although relevant, the decisions of the court in *Euclid* v. *Heaton* (1968), 15 Ohio St. 2d 65, and *State ex rel. Graves,* v. *Brown* (1969), 18 Ohio St. 2d 61, do not directly deal with the issues here before us. Those cases held that the delayed effective dates of parts of the "Modern Courts Amendment" were not effective because they were not printed on the ballot and conflicted directly with the existing *constitutional* provision making all amendments effective on certification by the Secretary of State. By the "Modern Courts Amendment" old Section 4, Article IV, Constitution, which set out the jurisdiction of the Court of Common Pleas was repealed and replaced by new Section 4(B), Article IV, so that, as amended, the new constitutional provision delimiting the jurisdiction of Courts of Common Pleas is not in conflict with any existing constitutional provisions. Therefore, the rulings in these two cases do not furnish a precedent for the decision here.

It should further be mentioned that although the spe-

cific issues of "singleness of purpose" and "misleading ballot" were not discussed in the *Heaton,* and *Graves cases,* these decisions by indirection hold that the "Modern Courts Amendment" was properly adopted. It is stated in the *Heaton case* that: "The conclusion is inescapable that the constitutional amendment, adopted by the voters on May 7, 1968, became a part of our Constitution."

Accordingly, the court holds that the "Modern Courts Amendment" was properly adopted and that under its provisions this court no longer has jurisdiction to hear appeals from the Hamilton County Municipal Court.

Since the Notices of Appeal were perfected within time, the Clerk of Courts will be instructed to deliver the papers herein to the Court of Appeals which has the power to amend the captions and to dispose of the cases in accordance with law.

*Appeal dismissed.*