THE STATE OF OHIO *v.* JENKINS.

(Nos. 83CRB47, 83TRC277 and 83TRD278—Decided June 14, 1983.)

Ashtabula County Court, Eastern Division.

*Mr. John G. Cardinal,* prosecuting attorney, and *Mr. Philip D. Gerken,* for plaintiff.

*Mr. Thomas C. Brown,* for defendant.

YOST, J. This case came on for hearing upon defendant's motion to suppress on May 3, 1983. Upon the evidence adduced at the hearing, and the memoranda submitted by counsel, the court makes the following findings and conclusions:

### Facts

At about 11:35 p.m. on February 21, 1983, Patrolman Larry Gollon, of the Jefferson Police Department, observed the defendant, Larry Jenkins, operating a motor vehicle in the village of Jefferson. Gollon first saw the defendant making a wide turn onto North Chestnut Street from Jefferson Street. In making this right-hand turn, the defendant crossed over the center line of North Chestnut Street. In following the defendant north on North Chestnut Street, the patrolman observed that, although driving slowly, the defendant crossed the center line several more times. Gollon decided to stop the defendant and turned on his flashing lights. The defendant did not stop, so Gollon began to shine his spotlight into defendant's mirror and vehicle. The defendant still failed to stop, so the patrolman finally employed his siren and, as the defendant turned west onto Beech Street, he did pull over. This took place over a distance of approximately one-half mile.

Upon talking to the defendant in his vehicle, Gollon could smell an odor of alcohol. He then put the defendant through standard field sobriety, or physical coordination, tests. Gollon then asked the defendant to sit in his police cruiser, where he informed him that he was under arrest for driving while intoxicated. The defendant then said there was no way that he was going to jail, and he got out of the police cruiser and went back to his truck. Gollon followed the defendant to his truck and brought him back to the police cruiser, but defendant again returned to his truck. The patrolman ordered the defendant to stop, but he did not comply. The defendant then drove off.

Defense witness, Donald Martin, testified that he observed this incident through the window of his home, which is located across the street from where the defendant was stopped. Although there were some minor discrepancies between the testimony of Martin and that of Gollon, Martin did say that he saw the defendant perform the field tests, and saw him get into the police cruiser. He also saw the defendant get out of the cruiser, with the patrolman following him to his truck. He saw Gollon return the defendant to the cruiser and open its door, whereupon the defendant slammed the door and returned to his truck. Martin saw the patrolman follow the defendant, holding his night stick and waving the defendant back. He saw the defendant get

into his truck and drive away, and the patrolman follow in his police cruiser. Although Martin could not hear any of the conversation, his observations of the actions of the parties clearly corroborate the fact that the defendant was under arrest.

Gollon then followed defendant to his home, a short distance away. In the meantime, he also radioed for assistance. The patrolman parked a short distance from the defendant's home and watched him go into his house. He waited a short time for his backup to arrive, after which they entered the defendant's home and forcibly took him into custody.

The court finds that the patrolman had probable cause to arrest the defendant for operating a motor vehicle while under the influence, and that he placed the defendant under arrest at the scene of the stop, on West Beech Street.

This leaves one issue for the court to resolve: Whether after the defendant's flight from custody Gollon was authorized to pursue him into his home to complete or effectuate the original arrest.

### Law

Reported cases are in agreement that a warrantless entry into a home is *per se* unreasonable, absent exigent circumstances or consent. The evidence of consent in this case was rather uncertain and the court will conclude, for purposes of this decision, that the defendant's wife did not consent to the entry of the officers into her home.

Where there may exist an exception to the warrant requirement, the underlying factor in all Fourth Amendment decisions is the reasonableness of the search or seizure.

The United States Supreme Court upheld the reasonableness of a statute authorizing warrantless arrests, upon probable cause, in *United States* v. *Watson* (1976), 423 U.S. 411. The court stated that the statute was consistent with the common-law rule. Ohio, in R.C. 2935.03, follows the common-law rule which authorizes a warrantless arrest for a misdemeanor or felony committed in a peace officer's presence, as well as for a felony which is not committed in his presence. *Watson,* however, involved a "midday public arrest." *Payton* v. *New York* (1980), 445 U.S. 573, deals with warrantless arrests, based upon such statutory authority where police officers forcibly enter a home. The court acknowledged that exigent factors would justify a warrantless entry into a home, for the purpose of arrest, but specifically stated it would not decide this question, since no exigent factors were present in that case. *Payton* involved routine arrests, in which there was not even probable cause that the defendants were at home at the time of entry.

More on point is *United States* v. *Santana* (1976), 427 U.S. 38, in which the officers had probable cause to arrest and observed the defendant standing in the doorway of her home. When they attempted to effect the arrest, the defendant retreated into her home, and they pursued her. They did not have an arrest warrant. The court held that "a suspect may not defeat an arrest which has been set in motion in a public place, and is therefore proper under *Watson*, by the expedient of escaping to a private place." *Id.* at 43.

Gollon's authority to pursue the defendant in this case is well-established. *State* v. *Foster* (1979), 60 Ohio Misc. 46 [49 O.O.2d 460]; R.C. 2935.03. *Foster* even imposes a duty on the officer to pursue beyond the geographical limits of his authority, if necessary. At least one court has even defined driving while intoxicated as an offense of violence, for purposes of the warrant exception contained in R.C. 2935.03. *State* v. *Ferguson* (App. 1977), 5 O.O. 3d 416. The facts presented, in the case at bar, also clearly demonstrate "fresh pursuit." R.C. 2935.29. While an officer is engaged in fresh pursuit, it is not unreasonable to wait a brief time for backup, while observing the fact that the defendant has entered his home.

The court believes that the constitutional question in this case is resolved by *United States* v. *Santana, supra,* since Gollon had already effected an arrest, in a public place, well away from defendant's home before the defendant escaped from his custody.

The court, in *Santana,* also discussed the likelihood that evidence might be lost or destroyed while waiting to obtain a warrant. This consideration bears on the reasonableness of the warrantless arrest, and such considerations are no less present in this case. For example, Gollon had a right to request that the defendant submit to a chemical test, and if he refused to do so, which he ultimately did, to use the fact of refusal as evidence. *Westerville* v. *Cunningham* (1968), 15 Ohio St. 2d 121 [44 O.O.2d 119]. The officer's continued observations of the defendant would also be important in this type of case. This evidence would be lost by a delay in obtaining a warrant. There are also other policy considerations. For example, feeling that he had successfully eluded Gollon, there would be nothing to prevent the defendant from driving again, while still under the influence. A contrary decision by this court would also encourage all offenders to feel that they could thwart their arrest, if they were able to escape to their homes. This would encourage open defiance of police authority.

In conclusion, the court makes reference to *State* v. *Marshall* (M.C. 1952), 61 Ohio Law Abs. 568. Interestingly, this case involves a situation in which a police officer, while on foot, observed the defendant driving improperly and in a manner suggesting that he may have been under the influence. This officer telephoned police headquarters, requesting a police cruiser. A police cruiser containing three additional officers responded to the call. Although the defendant was now gone from the scene, the original officer had recognized him and knew where he lived. The original officer, together with the three additional officers, proceeded immediately to the defendant's home which was outside their geographical jurisdiction, where they entered the defendant's home and arrested him. Although the warrantless entry of the home did not seem to concern the court, the arrest was upheld on the grounds that the pursuit was fresh and immediate, or within a reasonable time after the observation of the offense.

### Conclusion

Defendant's motion to suppress is hereby overruled and the court holds that all evidence obtained in the course of and following the defendant's arrest is not subject to suppression on constitutional grounds.

*Motion to suppress overruled.*