## The STATE of Ohio

v.

## THOMPSON.

Court of Common Pleas of Ohio,
Lucas County.

No. CR95–5052.

Decided July 14, 1995.

---

40

*Bruce Sorg* and *Stevin Groth,* for plaintiff.

*Jerome Phillips,* for defendant.

---

JUDITH ANN LANZINGER, Judge.

This case is before the court on a motion to suppress filed by the defendant, Tabitha Thompson, who was charged with theft of welfare benefits on January 12, 1995, as a result of a search of her residence on October 13, 1994. At the hearing held on March 24, 1995 on the suppression motion, the state presented testimony of Toledo Police Detectives Michael Awls and William Jay Gast, as well as Detective Kip Lewton of the Ohio Bureau of Criminal Identification. All were subject to cross-examination. Upon consideration of the evidence given at the suppression hearing, the arguments of assistant prosecutor Bruce Sorg and defense attorney Jerome Phillips, and the applicable law, the court grants the motion.

## I. FACTS

Evidence which came forth during the suppression hearing establishes the following: Defendant's boyfriend, Delano Carter, and his brother, James Carter, were under investigation by the Toledo Metro Drug Task Force for suspected drug activity. James Carter had an outstanding warrant for drug trafficking. Sometime before October 13, 1994 [1], due to a tip from a confidential informant,[2] surveillance of 1702 Ottawa Drive (defendant Tabitha Thompson's house) was established involving both unmarked police cars and plainclothes officers. When he came into work about 11:30 on October 13th, Detective Awls had begun filling out a search warrant application for search of the residence. Instead of finishing the affidavit and immediately obtaining a warrant to search, Awls left his task and went to the location himself.[3]

Sometime about 2:30 in the afternoon, several individuals were observed on defendant's porch. The surveillance team became concerned that the suspects knew of their presence since the name of an undercover officer was called out by one of them.[4] The Task Force members met in a nearby parking lot to discuss their options and then decided to approach the house. According to Detective Lewton, they intended to obtain consent to search the home.

As the police arrived at the house at approximately 2:30 p.m., three men on the front porch then fled. One person, eventually apprehended, ran from the porch and tossed a bag of what later was identified as crack cocaine. James Carter, who ran into the house after ignoring a police order to halt, locked the door behind him. Delano Carter remained on the porch with the police. Delano Carter (who reportedly lived at the home with defendant) *refused* the police entry into the house, as did the defendant herself. Delano Carter immediately called his lawyer from a cellular phone. That attorney then spoke to the police.

Detective Awls testified that the officers feared that while they waited for a search warrant, potential evidence of crack cocaine could be destroyed since James Carter, who already had outstanding felony warrants, was in the house. Eventually, a decision was made to forcibly enter with a crowbar. Once inside, four or five officers with drawn weapons searched the house for James Carter, caught him soon after, and then remained in the house while Detective Awls

---

1. Testimony on dates was vague at times due to the ongoing nature of the investigation.

2. The informant stated that approximately two pounds of cocaine would be shipped to this location and that distribution would occur the next day.

3. The reason for his abandonment of the search warrant was never made satisfactorily clear.

4. Actually the name called was an individual not present at the time, although he is a member of the Drug Task Force.

returned downtown to finish the search warrant process. The search warrant was not obtained until approximately two hours later. The search conducted afterwards using the warrant uncovered evidence (a car, cash, key to a safe deposit box) which led to defendant's eventual arrest for welfare fraud.

## II.  DEFENDANT'S MOTION

▮ Defendant argues that any evidence uncovered during the search should be suppressed as "fruits of the poisonous tree" because of the initial wrongful entry and securing of her home which violated her Fourth Amendment rights. Warrantless searches and seizures are *per se* unreasonable, subject to only a few specific and well-delineated exceptions. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. In fact, physical invasion of a home is the chief evil against which the Fourth Amendment to the United States Constitution is directed. *United States v. United States Dist. Court* (1972), 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752; *Welsh v. Wisconsin* (1984), 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732.

## III.  STATE'S ARGUMENTS

The state argues that the motion should be denied for three reasons: exigent circumstances existed to enter defendant's home without a search warrant; a valid search warrant eventually was obtained based on information discovered before the warrantless entry; and the evidence against defendant would have been inevitably discovered without the warrantless entry.

### A.  Exigent Circumstances

▮ Part of the state's justification is that the police were pursuing a fleeing felon. James Carter, the subject of an outstanding capias, did not reside at 1702 Ottawa Drive. The United States Supreme Court has held that an arrest warrant founded on probable cause implicitly carries with it limited authority to enter a *suspect's* home without a search warrant if there is reason to believe the suspect is inside. *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639. The law is different, however, where, as in this case, the police enter *a third party's house* without a warrant in order to arrest a nonresident. In such situations, the Supreme Court has held that, without consent or exigent circumstances, the police may not make a warrantless search for the subject of an arrest warrant in the home of a third party. *Steagald v. United States* (1981), 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38; *Welsh v. Wisconsin, supra.*

■ Here there certainly was no consent to search since both Carter and Thompson herself expressly refused entrance to the officers. Exigent circumstances that justify the warrantless entry of a home include the hot pursuit of a fleeing felon and the possible destruction of evidence. *Schmerber v. California* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908; *Warden v. Hayden* (1967), 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782; *United States v. Santana* (1976), 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300; *Minnesota v. Olson* (1990), 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85; *United States v. Sangineto–Miranda* (C.A.6, 1988), 859 F.2d 1501.

Here, however, police officers themselves created the claimed exigency. Their initial move upon the house was a tactical one, made, as one officer stated, to obtain consent to enter. No emergency existed which would cry out for immediate and warrantless activity. Surveillance had been ongoing at this location and the officers knew that the warrant process had already properly started. It is not reasonable to suggest that police can choose to create an exigent circumstance which then allows them to evade the requirements of a warrant. See *United States v. Morgan* (C.A.6, 1984), 743 F.2d 1158; *United States v. Timberlake* (C.A.D.C.1990), 896 F.2d 592; *United States v. Munoz–Guerra* (C.A.5, 1986), 788 F.2d 295; *State v. Jenkins* (1983), 10 Ohio Misc.2d 7, 10 OBR 159, 460 N.E.2d 1172. The police created their own emergency by deciding to break their cover and approach defendant's house, causing James Carter, previously standing with others on the porch, the opportunity to run inside and lock the door. This is not the meaning of "hot pursuit."

The evidence shows that Detective Awls began the search warrant application at 11:30 a.m. Instead of completing the application, or instructing someone else to do so in his absence, he abandoned the application and joined the other officers on their surveillance. Any emergency which may have been created was due to the police's failure to properly obtain a search warrant when they had the time, and all of the necessary information to do so.

B. Valid Search Warrant

■ Second, the state claims that because a valid search warrant was eventually issued after the forced entry of defendant's home, any evidence found pursuant to that warrant is admissible. Defendant challenges the issuance of the warrant itself because Detective Awls did not inform Judge Penn (the issuing judge) that the police had already broken into defendant's house and Judge Penn did not have all of the relevant facts. The search warrant affidavit on its face *does* report that the house had been secured ("The residence was secured until a

search warrant could be obtained"), even though it does not specify that the police were, in fact, inside the house at the time.

██ An affidavit supporting a search warrant enjoys a presumption of validity. *Franks v. Delaware* (1978), 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667. Unless it can be established that the issuing judge was not neutral and detached, suppression is appropriate only when there is evidence of deliberate falsity, reckless disregard for the truth, or information that the officer preparing the affidavit could not have harbored an objectively reasonable belief in the existence of probable cause. *Id.; United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677. Detective Awls's neglect in not mentioning the police presence in defendant's house does not rise to this level of conduct; the judge was entitled to rely on an affidavit which is proper on its face. Thus, defendant's challenge to the search warrant affidavit is rejected.

██ Existence of a search warrant affidavit proper on its face does not automatically mean that the evidence found during the search is admissible, however. If the initial illegal entry tainted the evidence found pursuant to a search warrant, that evidence must be excluded. *Segura v. United States* (1984), 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599. As Justice Oliver Wendell Holmes wrote in *Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319, "the essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all." This quotation leads to the third argument, that even supposing the entry to defendant's home was unreasonable, the evidence should be allowed since it would have been discovered anyway.

C. Inevitable Discovery

██ The inevitable-discovery doctrine, approved by the United States Supreme Court in *Nix v. Williams* (1984), 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377, provides that evidence may not be suppressed as the result of unlawful police conduct if the prosecution can establish by a preponderance of the evidence that the objectionable material would have inevitably or ultimately been discovered through lawful means. See, also, *State v. Perkins* (1985), 18 Ohio St.3d 193, 18 OBR 259, 480 N.E.2d 763. The state argues that the evidence in dispute would have ultimately been discovered as a result of the subsequently issued search warrant.

The warrant on its face specifies seizure of evidence relating to drug trafficking activity, not theft. Furthermore, some of the seized evidence was small and

easily moveable (cash, safe deposit box key). If defendant had not been detained by the officers in her home while they waited for the search warrant to be issued, she may have been free to relocate, hide, or otherwise dispose of items later seized.

Second, in order for evidence to be admissible under the inevitable discovery doctrine, the state must show "(1) a reasonable probability that the evidence would have been discovered by lawful means but for the police misconduct, (2) that the police possessed the leads making the discovery inevitable at the time of the misconduct, and (3) that the police were actively pursuing an alternate line of investigation prior to the misconduct." *State v. Wilson* (1994), 97 Ohio App.3d 333, 336, 646 N.E.2d 863, 865, citing *United States v. Buchanan* (C.A.6, 1990), 904 F.2d 349; *United States v. Webb* (C.A.5, 1986), 796 F.2d 60. The state has not satisfactorily established the second and third elements. The only lead the police had *was* the investigation of the Carters and surveillance of defendant's house for drug activity; they were not properly investigating a claim of welfare fraud. The compromised surveillance of other parties led to the forced entry of defendant's home. The police were not pursuing any other line of investigation against her. The warrant itself does not justify seizure of theft evidence against defendant.

## IV. CONCLUSION

For all of the reasons set forth above and after considering all the circumstances in this case, the court finds that defendant's Fourth Amendment protection against unreasonable search and seizure has been violated. Her motion, therefore, is granted and all statements and evidence resulting from the search of her home on October 13, 1994 will be suppressed.

*Motion granted.*