**STATE of Missouri, Respondent,**

v.

**Donald D. MANSFIELD, Appellant.**

No. 52680.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 3, 1988.

 the dissolution may have been required. *See In*  *re Marriage of Sumners, supra* at 436.

Charles H. Billings, St. Louis, for appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

GRIMM, Judge.

In this jury tried case, Donald D. Mansfield, appeals from his conviction of assault in the third degree, in violation of § 565.070 RSMo. 1986; and the Class D felony of resisting arrest, in violation of § 575.150 RSMo. 1986. Defendant was fined $1000.00 for each offense.

■ The appeal raises three issues. First, whether the trial court erred in denying defendant's motion to dismiss because the arrest took place in defendant's home without a warrant. We find no error because the arrest occurred on the porch of defendant's home and is therefore considered to be in a "public" place. Also, the defendant cannot defeat an otherwise valid public arrest by retreating into his home. *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). Second, whether the trial court erred when it failed to instruct the jury on the lesser offense of the Class A misdemeanor of resisting arrest since the court did instruct on a lesser offense on the accompanying assault charge. We find that the defendant did not specifically request a lesser-offense instruction and therefore may not complain about the trial court's failure to do so. *State v. Olson,* 636 S.W.2d 318, 322–323 (Mo. banc 1982); *See also,* MAI–CR 3d 304.11 G. Third, whether the trial court committed plain error in submitting the verdict directing instruction for resisting arrest because the instruction varies from the information. We find that the trial court did err; however, the error did not rise to the level of plain error. Affirmed.

We review the evidence in a manner consistent with the ruling and verdict at the trial and disregard evidence and inferences to the contrary. *State v. Esrock,* 660 S.W.2d 222, 223 (Mo.App.E.D.1983). On October 21, 1985, the defendant was home recuperating from surgery he had undergone three weeks previously, when at approximately 2:20 or 2:25 p.m., Deputy Sheriff Heil, dressed in uniform, came to defendant's door to serve him with a landlord-tenant petition. The petition related to defendant's son's lease, on which defendant was a co-signer. The deputy knocked on the door, defendant answered, and asked what the papers were. When the deputy told him it was a landlord suit, the defendant said he wouldn't accept it. The deputy told him if he didn't accept it, he would lay it on the door step and that the defendant would be legally served. At this point, according to the deputy, the defendant came "busting out of the storm door and grabbed the papers and threw it at me and hit me in the face with it." The deputy backed up and told the defendant he didn't want to fight on account of his heart condition. The deputy moved across the yard towards his sheriff's car and started to get into the car. However, the defendant slammed the door against him and pinned him between the door and the car. At this point, the defendant hit him in the chin and busted his chin open. In addition, the defendant's language became abusive and the defendant mentioned he had a gun in the house. Finally, the deputy pushed the defendant away, ran to the other side of the car, and when the defendant went back toward the house, the deputy jumped in the car.

After backing out of the driveway and going down the street about 200 feet, he radioed for help. Officer Snider arrived in three minutes. Shortly thereafter, the defendant's daughter, Chris, arrived home from school. Snider asked her to come over and questioned her about who was in the residence. She stated that only her father was at home. At this point, two other backup officers, Deputy Gregoire and Sergeant Borders, arrived.

A short time after Chris arrived, the defendant stepped out on the porch and began yelling for his daughter to come into the house and for the deputies to get out of there; some profanity was used. Snider told the defendant to come to his patrol car; the defendant shouted back "F—— you. You come over here." Snider repeated this request several times, but, the defendant continued to refuse.

At this point, Snider began moving toward the porch. The other two officers took a position behind Snider. Defendant was outside on the porch, but as Snider got closer, the defendant moved to the threshold in the doorway. Snider tried to calm the defendant down, but the defendant continued to say things such as, "F—— you. If you don't get off my property, I'm going to kick your ass." Snider walked up to the steps; the defendant was on the porch and was within three feet of Snider. Snider told the defendant he was under arrest for the felonious assault of Heil. The defendant responded, "F—— you" several times and said he was going inside. The defendant was described as being approximately six feet two inches tall, weighing 225 pounds. Snider is five feet nine inches tall, weighing 163.

As the defendant started to step back into the doorway, Snider reached out his left hand and grabbed the defendant's right arm stating that the defendant was under arrest. The defendant jerked free of Snider's grasp and started to slam the wooden door on him. Snider blocked the door; the defendant then threw a punch at Snider, hitting him in the mouth. Snider

was then able to push the wooden door open and with the aid of the other two officers, subdue the defendant.

■ Defendant's first point is that the trial court erred in denying the defendant's motion to dismiss because the arrest was made in the defendant's home without a warrant, in violation of the fourth amendment. Defendant argues that a person has "the right to retreat into the home and be free from unreasonable governmental entry," *citing Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). However, *Payton* is not applicable to the factual situation here because the defendant was placed under arrest while he was outside his house and before he went in the door.

In *Payton*, the police officers were acting under a statute which allowed them to enter any premises, without the consent of the occupant, in order to make a routine felony arrest. There, the New York police had assembled evidence sufficient to establish probable cause that Payton had murdered the manager of a gas station two days earlier. The police, without a warrant, then went to Payton's apartment in order to arrest him. No one answered the policemen's knock, so they broke in the door, went into the apartment, and found, in plain view, a shell casing, which they seized. The trial court overruled a motion to suppress the shell casing. However, the Supreme Court reversed because no arrest warrant was obtained. In addition, the court specifically noted that they were not considering "the sort of emergency or dangerous situation, described in our cases as 'exigent circumstances,' that would justify a warrantless entry into a home for the purpose of either arrest or search." *Id.* 445 U.S. at 583, 100 S.Ct. at 1378.

More on point is an earlier Supreme Court case, *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), where the defendant was standing in the doorway of her house when the police arrived and identified themselves; the defendant then retreated into the vesti-

bule of her house. The police followed, catching her in the vestibule. The *Santana* court reiterated its holding in *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), by stating that a warrantless arrest of an individual in a public place upon probable cause did not violate the fourth amendment. The Court pointed out that Santana was not in an area where she had any expectation of privacy, she was in a "public" place and not subject to fourth amendment protection. *Santana*, at 427 U.S. at 42, 96 S.Ct. at 2409. They then concluded that a person "may not defeat an arrest which has been set in motion in a public place, and is therefore proper under *Watson*, by the expedient of escaping to a private place." *Id.* at 43, 96 S.t. at 2410.

Here, the fact situation is somewhat like that of *Santana*. The defendant was either outside on his porch or in the threshold of the door when Snider placed him under arrest. As he placed him under arrest, Snider grabbed the defendant's right hand and held him until the defendant jerked free. After the defendant tried to slam the door on Snider, which Snider blocked, the defendant then punched Snider in the mouth. As in *Santana*, the defendant was in a public place when the arrest was set in motion and thus, the defendant cannot defeat an otherwise valid public arrest by going into his house. Point denied.

■ Defendant's second point is that the trial court erred in failing to instruct the jury on the Class A misdemeanor of resisting arrest as a lesser offense of the Class D felony of resisting arrest. We find that this claim is without merit.

In *State v. Olson*, 636 S.W.2d 318, 322–323 (Mo. banc 1982), the Supreme Court of Missouri held that "a defendant may not complain about a court's failure to give a lesser-offense instruction unless the defendant requests it specifically." Rule 28.-02(b) requires counsel to submit to the trial court instructions that the party requests. *See also* MAI–CR 3d 304.11 G. If the trial court refuses to give any such tendered instructions, Rule 28.02(e) requires the trial court to identify each alphabetically, file, and keep them as part of the record of the case. Nothing in the record here indicates that the defendant tendered an instruction on the Class A misdemeanor of resisting arrest. Since no such instruction was tendered, defendant cannot now complain about the court's failure to give such an instruction. Point denied.

Defendant's final point is that the trial court committed plain error in submitting the verdict directing instruction for resisting arrest because this instruction varied from the information. Although there was a variance, we find no manifest injustice and therefore, this point is denied.

In reviewing for plain error, the defendant has the burden "of demonstrating that the action of the trial court resulted in manifest injustice or miscarriage of justice." *State v. Lulkowski*, 721 S.W.2d 35, 36 (Mo.App.E.D.1986). *See also, State v. Mitchell*, 611 S.W.2d 211, 226 (Mo. banc 1981), where in footnote 3, the Supreme Court of Missouri said that when a motion for new trial does not include any complaint about an instruction, an appellate court's examination is for "manifest injustice."

Here, the instruction in pertinent part, states:

First, that on or about October 21, 1985, in the County of St. Charles, State of Missouri, Mitch Snider, Linda Gregoire, and Robert Border were making an arrest of defendant, Donald Dean Mansfield, for *assault in the first degree and assault in the second degree*, and

Second, that defendant knew that one or more law enforcement officers were making an arrest of defendant, and

Third, that for the purpose of preventing the officers from effecting the arrest, the defendant resisted the arrest by using violence or physical force,

then you will find the defendant guilty under Count III of resisting arrest [emphasis added].

The information charged that the three "law enforcement officers were making an arrest of defendant for *assault in the second degree* [emphasis added]." Thus, the variance was that the instruction referred to both assault in the first degree and in the second degree, while the information referred only to assault in the second degree.

■ Resisting arrest, as applicable here, has three elements, i.e., (1) knowledge that a law enforcement officer is making an arrest, (2) purpose on the part of the defendant to prevent the officer from effecting the arrest, and (3) resisting the arrest by use or threat of violence of physical force. *See* § 575.150 RSMo, 1986. The basic elements of the offense do not require that the arrest be for any particular offense. However, § 575.150.4 provides that if the resistance pertains to an arrest for a felony, resisting arrest is a class D felony; otherwise, it is a class A misdemeanor. MAI–CR 2d 29.60.2, and now MAI–CR 3d 329.60.2, requires the jury to find that a particular offense was committed. This requirement exists so that the appropriate range of punishment for the resisting arrest offense—be it a felony or a misdemeanor—can be determined by the jury.

[5] Here, in following the directions of MAI–CR 2d 29.60 to insert the name of offense, the trial court inserted "assault in the first degree and assault in the second degree." Only assault in the second degree should have been inserted. However, since both such assaults are felonies, the variance between the charge and the instruction was not prejudicial to the defendant. Therefore, we find no manifest injustice. Point denied.

The judgment is affirmed.

SIMON, P.J., and CRANDALL, J., concur.