768 P.2d 1351

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Milton S. WREN, Defendant–Appellant.**

**No. 16827.**

Court of Appeals of Idaho.

Feb. 2, 1989.

Douglas L. Mushlitz and William H. Ball (Clark & Feeney), Lewiston, for defendant-appellant.

Jim Jones, Atty. Gen. by David R. Minert, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

■ This appeal presents a narrow but important constitutional question. May police officers, in whose presence a nonviolent misdemeanor has occurred, pursue the alleged offender into his home and seize him there without an arrest warrant? We hold that they may not unless (a) the pursuit is triggered by flight from a lawful arrest outside the home, or (b) exigent circumstances, other than the pursuit itself, make it necessary to enter the home without a warrant.

The facts framing this issue are as follows. On February 11, 1986, police officers in Lewiston, Idaho, responded to a neighborhood complaint of noise at the residence of Milton S. Wren. Finding Wren in his back yard, the officers told him to "quiet down" or he would receive a citation for disturbing the peace. Wren walked into his house, but a few moments later he reappeared on the back porch. After directing some abusive language toward the officers, he began to reenter the house. The officers pursued him. The record is unclear as to whether the officers told Wren to stop, or announced that he was under arrest, while he was still on the porch. However, it is undisputed that the officers followed Wren into the house, pushing their way through the door and chasing him into the living room. There they subdued him by force and told him, possibly for the first time, that he was under arrest. During a search incident to the arrest, the officers found a small amount of marijuana in Wren's shirt pocket.

Wren ultimately was charged not only with disturbing the peace but also with resisting arrest, committing a battery upon an arresting officer, and possessing a controlled substance. Contending that the warrantless arrest had been improper, Wren moved to suppress the marijuana as well as any testimony regarding the struggle during the arrest. A magistrate denied the motion, holding that the arrest was valid. Wren filed an interlocutory appeal, by permission, from the magistrate's order. The district court affirmed. Today, for reasons explained below, we reverse the district judge's decision and remand the case for more particular findings by the magistrate concerning the location of the arrest and the existence of any exigent circumstances.

In Part I of today's opinion, we discuss four decisions by the United States Supreme Court, outlining the constitutional prohibition against nonconsensual, warrantless arrests in private residences. We note an exception for an arrest which is made in a public place but which culminates in a seizure within the home because the accused attempts to evade the arrest. We also note an exception for arrests made in the home under exigent circumstances. In Part II we examine these exceptions in greater detail. We hold that a warrantless arrest may be made while the accused is standing on a porch open to public view. We also hold that if an arrest is not initiated in a public place, but is made after a warrantless entry into the home, it may not be justified solely upon a theory of "hot" or "fresh" pursuit. Other exigent circumstances must exist. In Part III we apply these legal principles to the instant case, concluding that a remand is required for further findings. Finally, in Part IV we identify the evidence that must be suppressed if Wren's arrest ultimately is found to be invalid.

I

We begin with the axiom that an arrest is a seizure of the person within the meaning of the Fourth Amendment of the United States Constitution.[1] The Fourth Amendment provides as follows:

1. Wren has not challenged his arrest upon state    constitutional grounds. For this reason, we

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Perhaps because "persons" and "houses" are specifically enumerated in the Fourth Amendment, the United States Supreme Court has drawn a bright constitutional line against the warrantless arrest of a person in his home. The location of this line has been surveyed in four recent decisions. Chronologically, they are *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); and *Welsh v. Wisconsin*, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). We will discuss the decisions in that order.

*Watson* is important, not so much for what the Supreme Court said, but more for what the Court implied, about arrests in private residences. The case arose from a warrantless arrest, made in a restaurant, for a felony. The defendant argued that any nonconsensual seizure, including a seizure of the person, requires a warrant. Unless a warrant exists, the defendant urged, the seizure is unreasonable *per se* under the Fourth Amendment, absent exigent circumstances. However, the *Watson* court declared that the Fourth Amendment was never intended to repeal entirely a common law rule that felony arrests could be made upon reasonable grounds at any time or place. The court held that arrests made in *public* places are *not* subject to the Fourth Amendment's warrant requirement:

> We decline to transform [a] judicial preference [for arrest warrants] into a constitutional rule when the judgment of the Nation and Congress has for so long been to authorize warrantless public arrests on probable cause rather than to encumber criminal prosecutions with endless litigation with respect to the existence of exigent circumstances, whether it was practicable to get a warrant, whether the suspect was about to flee, and the like.

423 U.S. at 423–24, 96 S.Ct. at 828. In a concurring opinion, Justice Powell acknowledged that the Court's view on seizure of persons was not conceptually harmonious with prior decisions on searches and seizures of property. Nevertheless, he argued that the Fourth Amendment should be construed in accord with history rather than with logic.[2]

The *Watson* court noted that at common law, an officer could make a warrantless arrest for any crime, whether a felony or a misdemeanor, committed in his presence. This authority eventually was codified in the laws of most states, including Idaho. *See* I.C. § 19–603(1); *see generally* Note, *The Neglected Fourth Amendment Problem in Arrest Entries*, 23 STAN.L.REV. 995 (1971) (hereinafter cited as *Arrest Entries*). Thus, although *Watson* involved a felony, its historical analysis suggested that an officer could make a constitutionally valid arrest for a misdemeanor in a public place, without a warrant, if the offense was committed in his presence. However, *Watson* left unanswered the question whether such warrantless arrests could be made within private residences. As noted by Justice Stewart, in another

need not decide whether the Idaho Constitution provides greater protection against warrantless arrests in the home than does the United States Constitution.

**2.** The *Watson* decision has been sharply criticized in some quarters. *See, e.g.*, 2 W. LaFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 5.1(b) (2d ed. 1987) (hereinafter cited as "LaFAVE"). However, we need not take sides in that debate today. It is sufficient for our purposes to note that by distinguishing arrests in public places from arrests in private places, *Watson* established the foundation for close scrutiny of warrantless arrests at home.

concurring opinion, "[t]he Court does not decide, nor could it decide in this case, whether or under what circumstances an officer must obtain a warrant before he may lawfully enter a private place to effect an arrest." *Id.* at 433, 96 S.Ct. at 832.

The next case, *United States v. Santana, supra,* presented an issue similar to the question posed by Justice Stewart. There, the police were informed that a woman had just committed a felony by selling an illicit drug. As the officers observed the woman, she was holding a paper bag and "standing directly in the doorway of her home—one step forward would have put her outside, one step backward would have put her in the vestibule of her residence." 427 U.S. at 40, n. 1, 96 S.Ct. at 2408, n. 1. When the officers approached the house and shouted "police," the woman retreated into the home. The officers followed. As she tried to pull away, the bag tilted and "two bundles of glazed paper packets with a white powder" fell to the floor. *Id.* at 40, 96 S.Ct. at 2408.

The Supreme Court upheld the warrantless seizure of the woman, and the concurrent seizure of the physical evidence, inside the home. The Court said that the arrest had begun when the woman occupied a "public" place in the doorway of the house.

> She was not in an area where she had any expectation of privacy. "What a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection." ... She was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house.... Thus, when the police ... sought to arrest her, they merely intended to perform a function which we have approved in *Watson.*

*Id.* at 42, 96 S.Ct. at 2409 (citations omitted). The Court also articulated a second rationale for its decision. The Court said that exigent circumstances were present because the police had "a realistic expectation that any delay would result in destruction of evidence...." *Id.* at 43, 96 S.Ct. at 2410. For this reason, the Court observed, the woman's retreat into the home had triggered a "hot pursuit." *Id.*[3]

Thus, in *Santana* as in *Watson,* the Supreme Court implicitly acknowledged the special importance of private residences in applying the Fourth Amendment to arrests. A warrantless seizure would be upheld only if the arrest began outside the home or if it was made in the home under exigent circumstances. This limitation upon warrantless arrests in the home was confirmed by the Court in *Payton v. New York, supra.* There the Court held that the Fourth Amendment prohibits the police from making a warrantless, nonconsensual entry into a suspect's home in order to make a routine, nonexigent arrest.

> The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their ... house ... shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." ... In terms that apply equally to seizures of property and to seizures of persons, *the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.* [Emphasis added.]

---

**3.** The Court's discussion of the exigency rationale moved Justice Marshall to suggest, in a separate opinion joined by Justice Brennan, that the case did not turn at all upon the fact that the arrest began when the woman was in public view at the doorway. However, we decline to speculate that one of the rationales in *Santana* was displaced by the other. We believe both were intended by the majority of the Court to be authoritative.

445 U.S. at 589–590, 100 S.Ct. at 1381–82 (citations omitted).

Having drawn this bright line, the Supreme Court attempted to define the exigent circumstances exception in *Welsh v. Wisconsin, supra.* There, an individual saw a car swerve, leave the road, and come to rest in a field. He then observed the driver, who appeared to be sick or inebriated, leave the vehicle and walk away from the scene. The witness promptly gave this information to police officers, who checked the registration of the abandoned car and learned that it was registered to Edward Welsh. Without first securing a warrant, the police hurried to Welsh's home, entered it, found Welsh lying in bed, and arrested him for driving while intoxicated.

The Supreme Court held the arrest invalid. The Court prefaced its analysis by acknowledging that *Payton* had stopped short of explaining the circumstances that would be characterized as "exigent" rather than "routine." However, the *Welsh* court then made it clear that an exception for exigent circumstances would not be allowed to swallow the rule announced in *Payton.* Declared the Court, "[e]xceptions to the warrant requirement are 'few in number and carefully delineated....' " 466 U.S. at 749, 104 S.Ct. at 2097 (citations omitted). The Court added that the cognizable scope of exigent circumstances would be further narrowed where the alleged offense is relatively minor.[4]

Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attached to all warrantless home entries.... When the government's interest is one to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.

*Id.* at 750, 104 S.Ct. at 2098 (citations omitted). The Court concluded that exigent circumstances had not been demonstrated.

Taken together, these four Supreme Court decisions enunciate several principles germane to the case before us today. *Payton* provides the general rule that a nonconsensual, warrantless arrest in the home violates the Fourth Amendment. The rule is narrowed by two exceptions. First, as noted in *Santana,* where an arrest begins in a public place, the seizure may be completed within the home if the accused flees there in an attempt to evade the arrest. In such a case the arrest is deemed to have occurred in public, where—according to *Watson*—no warrant is required. The second exception, as set forth in *Santana* and *Welsh,* is that a warrantless seizure may be made in the home if exigent circumstances make it necessary to dispense with a warrant. As noted in *Welsh,* the government's burden of proving exigent circumstances for a warrantless arrest at home is especially heavy if the alleged offense is relatively minor.

II

We now consider the specific meaning of these principles in relation to issues presented in today's case. We first discuss whether the porch of a house is a public

---

4. It may be questioned whether the scope of Fourth Amendment protection should depend upon the severity of a potential sentence for the alleged offense. *See generally* LaFAVE at § 6.1(f). As the *Welsh* court acknowledged, the seriousness of an alleged crime does not, of itself, constitute an exigent circumstance. 466 U.S. at 753, 104 S.Ct. at 2099. However, we are *constrained* to accept the statement in *Welsh* that "an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made." 466 U.S. at 753, 104 S.Ct. at 2099. In some cases the "gravity" of the offense may be reflected in its violent or threatening nature. Violent conduct may be considered, along with other facts, in assessing a risk of imminent harm to police officers, or to others, if an arrest is delayed while awaiting a warrant. This is the meaning we ascribe to the *Welsh* court's reference to the "gravity" of the offense.

place where a warrantless arrest may be made—or, at least, may begin. We then discuss whether a hot pursuit is, of itself, an exigent circumstance permitting a warrantless arrest within the home.

## A

In *Santana*, it will be recalled, the Supreme Court characterized the open doorway of a house as a "public" place. The woman standing there was visible to police officers on the street; consequently, she was "not in an area where she had any expectation of privacy." 427 U.S. at 42, 96 S.Ct. at 2409. We believe the same "expectation of privacy" analysis may be employed in determining whether a porch is a public place where a warrantless arrest may be made.

■ If a porch consists of unenclosed steps, or if it is partially obscured but a person standing there remains visible from a street, alley or adjacent property, a reasonable expectation of privacy does not exist. The porch will be treated as a "public" place where a warrantless arrest may be made. *Koehler v. State*, 444 So.2d 1032 (Fla.Dist.Ct.App.1984); *People v. Gacho*, 122 Ill.2d 221, 119 Ill.Dec. 287, 522 N.E.2d 1146, *cert. denied*, —— U.S. ——, 109 S.Ct. 264, 102 L.Ed.2d 252 (1988); *State v. Mansfield*, 748 S.W.2d 949 (Mo.Ct.App.1988). If an arrest is announced while the accused is standing on an open porch, and he retreats within the home to evade the arrest, the police may follow without a warrant and complete the seizure. *Cf. State v. Jenkins*, 10 Ohio Misc.2d 7, 460 N.E.2d 1172 (1983) (arrest announced in street, culminating in seizure within home).

Conversely, if the porch is enclosed, or is so secluded that it is not readily visible from a street, an alley or an adjoining property, then a reasonable expectation of privacy may exist. In that event, the porch is indistinguishable from the home. It is not a "public" place where a warrantless arrest may be made, absent exigent circumstances. *Brown v. State*, 392 So.2d 280 (Fla.Dist.Ct.App.1980), *cert. denied*, 454 U.S. 819, 102 S.Ct. 98, 70 L.Ed.2d 89 (1981).

## B

We now consider the exigent circumstances exception, and its relation to hot pursuit.[5] Several reported cases appear to suggest that hot pursuit is an exigent circumstance, sufficient by itself to excuse the warrant requirement for an arrest within the home. *E.g., Gasset v. State*, 490 So.2d 97 (Fla.Dist.Ct.App.1986); *State v. Blake*, 468 N.E.2d 548 (Ind.Ct.App. 1984); *State v. Koziol*, 338 N.W.2d 47 (Minn.1983); *State v Niedermeyer*, 48 Or. App. 665, 617 P.2d 911 (1980), *cert. denied*, 450 U.S. 1042, 101 S.Ct. 1761, 68 L.Ed.2d 239 (1981). However, as we shall now explain, any simplistic equation of a hot pursuit with an exigent circumstance is conceptually unsound and is at variance with pronouncements of the United States Supreme Court.

### 1

The term "exigent circumstances" has never received precise definition. It has been described as a broad catalogue of fact patterns "sufficient to excuse an officer from the requirement of obtaining a warrant ... for which he has probable cause." 1 W. RINGEL, SEARCHES & SEIZURES, ARRESTS AND CONFESSIONS, p. 10–1 (1985). In the oft-cited case of *Dorman v. United States*, 435 F.2d 385 (D.C.Cir.1970),

---

5. Wren has argued that hot pursuit is inapposite to this case because it pertains only to "fleeing felons," not to persons accused of misdemeanors. The argument is misdirected. The statutory doctrine of hot pursuit, or "fresh" pursuit as it is called in the Idaho Code, empowers a peace officer to enter another jurisdiction while attempting to apprehend a violator of the law. It applies only to apprehension of persons believed to have committed felonies. I.C. § 19–701A. However, this statutory limitation upon the power to cross jurisdictional boundaries does not by implication create any additional restriction upon warrantless home arrests under the Fourth Amendment. *Cf. Welsh v. Wisconsin, supra* (finding no hot pursuit, but implicitly acknowledging that a hot pursuit could exist, in a non-felony case).

exigent circumstances were said to arise from an ad hoc balancing of such factors as the gravity (particularly, the violent nature) of the alleged offense, the likelihood that the suspect is armed, the strength of the evidence showing probable cause, the likelihood that the suspect is within the premises being entered, the probability that the suspect will escape if not swiftly apprehended, the degree of peaceableness with which the entry can be made, and the time of day or night when the entry is undertaken. *See also, e.g., State v. Rauch,* 99 Idaho 586, 590, 586 P.2d 671, 675 (1978) (reciting *Dorman* factors but finding no exigent circumstances to justify noncompliance with knock-and-announce statute); *State v. Campbell,* 104 Idaho 705, 662 P.2d 1149 (Ct.App.1983).

The *Dorman* balancing factors reflect two approaches to the definition of exigent circumstances. One approach is to focus upon the reasonableness of the entry. This approach emphasizes the strength of the evidence of probable cause, the likelihood that the suspect is on the premises, the officers' avoidance of unnecessary force, and the time of day or night when the entry is made. The second approach is to focus upon the necessity of dispensing with a warrant. This approach emphasizes the risks attendant to delay: an imminent danger of harm to persons or property, a likelihood that evidence will be lost or destroyed, or a probability that the suspect will escape.

The necessity approach is consistent with the Fourth Amendment's purpose of removing search-and-seizure decisions from officers in the field and placing them with neutral, detached magistrates. In contrast, the reasonableness-of-entry approach disserves this purpose by allowing the police to make such decisions themselves in circumstances where the necessity of bypassing a magistrate has not been estab-

lished. *Arrest Entries, supra,* at 1002–03. As noted by Justice Frankfurter, the warrant requirement of the Fourth Amendment should be subject only to "exceptions justified by absolute necessity." *United States v. Rabinowitz,* 339 U.S. 56, 70, 70 S.Ct. 430, 437, 94 L.Ed. 653 (1950) (dissenting opinion).[6]

Accordingly, in search cases, the Supreme Court has focused on elements of necessity when determining the existence of exigent circumstances (or "exceptional" circumstances, as the Court sometimes calls them). In *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), the Supreme Court found no sufficient reason for dispensing with a warrant where there was no risk of imminent harm to any person, no evidence was being destroyed or likely to be destroyed, and the suspect was not likely to flee while the police obtained a warrant. In *McDonald v. United States,* 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948), the Supreme Court made a similar determination, explaining that inconvenience to the police, occasioned by delay to obtain a warrant, was not an adequate reason to make a warrantless entry. In *United States v. Jeffers,* 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951), the Supreme Court again invalidated a warrantless entry, noting that "[t]here was no question of violence, no moveable vehicle [object] was involved, nor was there an arrest or imminent destruction, removal, or concealment of the property intended to be seized." *Id.* at 52, 72 S.Ct. at 95.

■ This focus on necessity has continued to the present day. It applies equally to home arrest cases. The unifying question, in determining whether exigent circumstances exist, is whether the facts reveal "a compelling need for official action and no time to secure a warrant." *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978). A warrantless entry

---

6. In *Rabinowitz,* a majority of the Supreme Court employed a general reasonableness standard in upholding a warrantless search of a suspect's office following his arrest. Subsequently, in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court disapproved *Rabinowitz* and adopted the necessity standard in defining the permissible scope of a search incident to arrest.

will be upheld if, but only if, there is a "compelling need" to avoid an imminent risk of danger to life or property, destruction or loss of evidence, or escape of the suspect. W. Donnino and A. Girese, *Exigent Circumstances for a Warrantless Home Arrest*, 45 ALBANY L.REV. 90 (1981). The risk must especially be clear if the underlying offense is relatively minor. *Welsh v. Wisconsin, supra.*

## 2

Where exigent circumstances exist, the facts also may reveal that police officers have engaged in a hot pursuit of the suspect. Thus, in *Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), a hot pursuit occurred after the commission of a robbery at gunpoint. The Supreme Court upheld a warrantless arrest at the suspect's home, noting that he was armed and dangerous to others, and that any delay might result in an escape. Similarly, in *United States v. Santana, supra*, the Court noted that a hot pursuit had occurred. The Court upheld a warrantless arrest in the home, stating as one of its rationales that the suspect might have destroyed evidence of a recently completed drug transaction. In each of these cases, there was an exigent circumstance, in addition to the hot pursuit, demonstrating a "compelling need" for immediate action. These warrantless entries were not upheld solely on the basis of hot pursuit.

A hot pursuit, by itself, creates no necessity for dispensing with a warrant.[7] Of course, it may seem reasonable to make a warrantless entry after a hot pursuit; indeed, police officers understandably may be troubled by the inconvenience of obtaining a warrant before entering the home. However, as we have seen, the Supreme Court has held that the Fourth Amendment does not yield to the convenience of law enforcement. It yields only to necessity. Accordingly, a warrantless arrest within the home cannot be justified upon hot pursuit alone. The facts also must reveal one of the exigent circumstances enumerated above—an imminent danger to person or property, a likelihood that evidence will be lost or destroyed, or a probability that the suspect will escape while a warrant is being obtained. As noted earlier, this is especially true where the alleged offense is relatively minor. *Welsh v. Wisconsin, supra.*

Accordingly, we join those courts which have held that a warrantless arrest in the home must be justified upon an exigent circumstance in addition to the pursuit. *E.g., Jeffcoat v. Hinson*, 851 F.2d 356 (4th Cir.1988); *McCall v. People*, 623 P.2d 397 (Colo.1981); *People v. Day*, 165 Ill.App.3d 266, 116 Ill.Dec. 525, 519 N.E.2d 115 *rev. denied*, 121 Ill.2d 575, 122 Ill.Dec. 441, 526 N.E.2d 834 (1988); *People v. Klimek*, 101 Ill.App.3d 1, 56 Ill.Dec. 403, 427 N.E.2d 598 (1981); *People v. Strelow*, 96 Mich.App. 182, 292 N.W.2d 517 (1980); *State v. Storvick*, 423 N.W.2d 398 (Minn.Ct.App.1988); *State v. Bolte*, 225 N.J.Super. 335, 542 A.2d 494 (App.Div.1988). Our holding is consistent with decisions upholding warrantless entries where hot pursuit has, in fact, been coupled with another exigent circumstance. *E.g., City of Kirksville v. Guffey*, 740 S.W. 2d 227 (Mo.Ct.App.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988); *State v. Komoto*, 40 Wash.App. 200, 697 P.2d 1025 *cert. denied*, 474 U.S. 1021, 106 S.Ct. 572, 88 L.Ed.2d 556 (1985).

## III

Based on the foregoing analysis, the critical inquiries in the present case are whether the officers placed—or attempted to place—Wren under arrest in a "public"

---

**7.** Numerous Idaho cases have listed "hot pursuit" among the exceptions to the warrant requirement. However, many of these listings have been boilerplate recitals. Where hot pursuit has played a part in a decision, it usually has been qualified by a reference to the danger posed by the offender, to the potential destruction of evidence, or to the possibility of an escape. *E.g., State v. Campbell, supra.*

place before he entered his house; and, if not, whether a warrantless arrest could have been made inside the home due to exigent circumstances other than the pursuit. Unfortunately, on neither of these questions does the record contain dispositive findings by the magistrate.

The magistrate made no finding as to whether Wren was entitled to a reasonable expectation of privacy on the back porch of his house. All witnesses—the officers, Wren, and a co-occupant of the house—testified that the porch was partially enclosed. The record does not clearly indicate whether a person standing on the porch would have been visible from a street, alley or adjoining property. It does appear, of course, that the officers could see Wren when he made abusive remarks toward them, but the record does not clearly show where the officers were standing at that time.

Neither do the magistrate's written findings of fact contain a determination as to Wren's location when the officers communicated that he was under arrest.[8] During the hearing on Wren's motion to suppress evidence, the magistrate orally remarked that the "arrest was effected in the doorway...." However, the magistrate did not specify whether Wren was in the doorway, or the officers were in the doorway, when the arrest occurred. If the officers were in the doorway, and Wren was inside the house, the arrest could not be treated as occurring in a "public" place.

We have closely studied the underlying evidence on the time and place of arrest. The officers' testimony is conflicting. They contradicted each other, and they contradicted their previous written reports, in several material respects. Their testimony also conflicted with that given by Wren,

who stated that no arrest was communicated to him until the struggle in the living room. Upon this record, we cannot make appellate findings of fact to supplement the incomplete findings of the magistrate.

Perhaps deeming it unnecessary, the magistrate made no finding with respect to any exigent circumstances that might have justified an arrest within the home. Although the state has argued that such circumstances existed, it appears that the state is referring primarily to the hot pursuit. As we have explained, it would be necessary to identify another circumstance —i.e., imminent danger to person or property, likelihood of loss or destruction of the evidence, or probability of escape—to justify dispensing with a warrant. We find no clear showing of any such factor in the record now before us.

Accordingly, we conclude that the case must be remanded for further findings. The magistrate, in his discretion, may rely on the existing record or take additional evidence. He is directed to determine whether the fact of arrest was communicated to Wren while he was standing on the porch; and, if so, whether the porch was a "public" place where a warrant would not be required. If the magistrate finds that the arrest was not communicated while Wren was on the porch, or that the porch was not a "public" place, then the magistrate should determine whether any exigent circumstances, other than the hot pursuit, justified making an arrest within the home without a warrant. With respect to all of these determinations, the magistrate is reminded that where a seizure has occurred without a warrant, the government bears the burden of proving facts necessary to establish an exception to the warrant requirement.[9] *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

*States v. Johnson*, 626 F.2d 753, 775 (9th Cir. 1980), *aff'd on other grounds*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982); *see also* LaFAVE, *supra*, at § 5.1(i).

**8.** An arrest occurs when it is communicated, not when the officer decides to take such action. No particular acts, words or formulaic expressions are required; however, the communication must be sufficient to inform a reasonable *person* that he is no longer free to choose between terminating or continuing his encounter with the law enforcement officers. *E.g., United*

**9.** In his "conclusions of law," the magistrate stated that Wren had not "met his burden of showing that his arrest was defective under the

## IV

As further guidance on remand, we will comment on the scope of evidence to be suppressed if Wren's arrest is ultimately found to be invalid. It is clear, of course, that evidence of Wren's conduct in disturbing the peace, which occurred before the arrest, should not be excluded. On the other hand, it is equally clear that the marijuana in Wren's shirt pocket, found during a search incident to the arrest, would be excludible. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963).

The remaining evidence has to do with Wren's altercation with the officers, upon which he is charged with battery and resisting arrest. In our view, this evidence flowed not from the arrest but from Wren's conduct. *See generally* LaFAVE, *supra,* at § 1.13. Under Idaho law, Wren had no underlying right to resist the officers' attempt to make a peaceable arrest. *State v. Richardson,* 95 Idaho 446, 511 P.2d 263 (1973), *cert. denied,* 414 U.S. 1163, 94 S.Ct. 928, 39 L.Ed.2d 117 (1974). On the other hand, if the officers initiated the violence, or used excessive force, Wren would have been entitled to protect himself. *State v. Hartwig,* 112 Idaho 370, 732 P.2d 339 (Ct.App.1987). But this right simply would afford a potential defense to the charges against Wren; it would not be a ground for excluding evidence relating to those charges.

We conclude that if the magistrate determines the arrest to be invalid, the marijuana shall be suppressed but the evidence relating to the other charges shall remain unaffected. Accordingly, the decision of the district court, upholding the magistrate's order denying the motion to suppress, is reversed in part. The case is remanded to the district court with direction to remand it further to the magistrate for proceedings consistent with this opinion.

WALTERS, C.J., and SWANSTROM, J., concur.

---

laws of this state or the Constitution." Although a defendant challenging an illegal seizure has the initial burden of demonstrating the illegality, the burden shifts to the government upon a showing that the seizure was made without a warrant.