**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 35762**

| | |
|---|---|
| STATE OF IDAHO, | ) 2010 Unpublished Opinion No. 469 |
| | ) |
| Plaintiff-Respondent, | ) Filed: May 17, 2010 |
| | ) |
| v. | ) Stephen W. Kenyon, Clerk |
| | ) |
| SANDRA PEREZ CANTU, | ) THIS IS AN UNPUBLISHED |
| | ) OPINION AND SHALL NOT |
| Defendant-Appellant. | ) BE CITED AS AUTHORITY |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Minidoka County. Hon. John M. Melanson, District Judge; Hon. Rick Bollar, Magistrate.

Memorandum decision and order on intermediate appeal affirming judgment of conviction and sentence for resisting and obstructing an officer, affirmed.

John A. Bradley, Burley, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Sandra Perez Cantu appeals from the district court's intermediate appellate memorandum decision and order affirming her judgment of conviction and sentence for resisting and obstructing an officer. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

The following facts giving rise to Cantu's conviction were related by the district court in its memorandum decision and order on appeal from the magistrate:

> On May 3, 2006, Corporal Barnes of the Heyburn police department observed Sandra Cantu drive her vehicle away from her residence. He recalled that there was an active warrant for Ms. Cantu's arrest. He then called dispatch to determine if the warrant was still valid. In his patrol car the officer followed Ms. Cantu as she drove around the block and returned to her residence. As Ms. Cantu walked from her vehicle towards her residence the officer had her

1

come back from the residence and questioned her about the warrants. She told the officer that she had "taken care of" the warrants. The officer then received a call from dispatch that there were active warrants for Ms. Cantu's arrest. The officer then informed Ms. Cantu that there were active warrants but Ms. Cantu continued to express her belief that the warrants were no longer active. Ms. Cantu had her young grandchildren in her car so the officer asked her if there was someone who could take care of the children. Ms. Cantu then took the children from her car and went into the residence and began making telephone calls. The officer entered the residence with her. Ms. Cantu's daughter and a family friend arrived at the residence and the officer asked Ms. Cantu if the children could be left with the daughter. Ms. Cantu agreed. The officer asked Ms. Cantu to step outside so that he would not have to handcuff her in front of the children. At the same time, Ms. Cantu's husband walked into the residence and demanded that the officer leave the house. The officer again asked Ms. Cantu to step outside and he asked Ms. Cantu's daughter to stay inside with the children. Ms. Cantu went outside but her husband then stated that unless the officer had a warrant in hand he was not going to let her go and that she would not leave with the officer. Ms. Cantu then stopped on the front steps of the residence and refused to move. The officer told Mr. Cantu that he did not have the warrants and that they would be served and copies would be furnished when they got to jail. The officer then asked Ms. Cantu to turn around and put her hands behind her back but she refused to do so and she sat down. When the officer reached down to grab her arm she dropped to the ground and went limp. The officer testified that at about this time he accidentally stepped on one of Ms. Cantu's arms. At some point another officer arrived and he dealt primarily with Mr. Cantu. Ms. Cantu's daughter then decided to become involved and was approaching the officer. After the daughter refused to back away the officer used pepper spray on the daughter. At about the same time, Ms. Cantu began pulling on the officer and he testified that he became concerned he would be pulled down with her so he used pepper spray on Ms. Cantu. As the officer was trying to put the pepper spray away, Ms. Cantu began to get up from the ground. The officer testified that he believed Ms. Cantu was trying to get away. On direct examination he was asked whether Ms. Cantu was struggling with him and he responded "yes." The officer then put handcuffs on Ms. Cantu and took her to his patrol car and transported her to the jail where he gave her copies of the warrants. . . .

Cantu was charged with resisting and obstructing an officer, Idaho Code § 18-705.[1] She filed a motion to suppress evidence of her resistance of the arrest, claiming her arrest was a violation of her right to be free from unreasonable seizures under the Idaho and United States Constitutions. The magistrate denied the motion and the case proceeded to a jury trial. When the jury returned with its verdict, it informed the magistrate that the caption on the verdict form

---

[1]     Section 18-705 makes it a crime to "wilfully resist[ ], delay[ ] or obstruct[ ] any public officer, in the discharge, or attempt to discharge, . . . any duty of his office . . . ."

was incorrect, because it listed the defendant as Richard Cantu (Cantu's husband) rather than Sandra Cantu. The magistrate denied Cantu's motion for a mistrial based on this error.

The jury found Cantu guilty and once the jury had been dismissed, Cantu informed the court that she and her husband had previously worked with one of the jurors, a fact the juror had not disclosed during *voir dire*. Cantu filed an Idaho Criminal Rule 29(c) motion for judgment of acquittal, alleging the verdict was contrary to the evidence and an I.C.R. 29.1(a) motion for mistrial based on the incorrectly captioned verdict form. After a hearing, the magistrate denied both motions. The magistrate entered a judgment of conviction and imposed a sentence of 180 days, with 178 suspended, and twenty-four months of probation. Cantu appealed to the district court, specifically asserting that the magistrate erred in denying her motion to suppress, in refusing to include a proffered jury instruction, and in denying her motions for judgment of acquittal, for a mistrial, and for a new trial. Cantu also contended that she was entitled to a new trial based on errors that occurred over the course of the case and that the sentence imposed was unduly harsh.

After a hearing, the district court issued a memorandum decision and order, affirming Cantu's judgment of conviction and sentence. Cantu appeals therefrom.

## II.

## ANALYSIS

On review of a decision of the district court, rendered in its appellate capacity, we review the decision of the district court directly. *State v. DeWitt*, 145 Idaho 709, 711, 184 P.3d 215, 217 (Ct. App. 2008). We examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Id.* If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id.*

Cantu advances several arguments on appeal, including three based on her contention that her arrest was illegal. As a result, she argues, the trial court erred in denying her motion to suppress, in instructing the jury, and that the evidence is insufficient to sustain the jury verdict. Cantu also contends that other errors occurred during the course of trial that warrant vacating the judgment of conviction based on the application of the cumulative error doctrine.

3

## A. Motion to Suppress

Cantu argues that the court erred in denying her motion to suppress evidence of her resistance of the arrest because the arrest was illegal. Specifically, she contends the officer did not comply with Idaho Criminal Rule 4(h)(3) which requires an officer to provide copies of the arrest warrants at the time of the arrest, or, if he does not have the warrants in his possession, to inform the arrestee of the offenses charged on the warrants and provide copies of the warrants as soon as possible after the arrest.[2]

Even assuming that the exclusionary rule may apply to illegal government actions that do not implicate constitutional protections, *see Virginia v. Moore*, 553 U.S. 164 (2008) (holding that an arrest that comported with the United States Constitution but violated state law does not require exclusion of evidence), it is clear that the exclusionary rule would not apply in this instance under *State v. Lusby*, 146 Idaho 506, 198 P.3d 735 (Ct. App. 2008). There, officers were dispatched to an apartment to investigate a disturbance between Lusby and another individual. While officers were speaking with Lusby, she became agitated and retreated into the apartment. An officer followed Lusby, pulled her out, and announced that she was under arrest for resisting and obstructing. Lusby then struggled with the officer and as she was being handcuffed, she allegedly intentionally elbowed the officer in the face. Lusby was searched incident to arrest and officers found drug paraphernalia in her possession, leading to charges of felony battery on a law enforcement officer, possession of drug paraphernalia, and misdemeanor resisting and obstructing an officer. Lusby moved to suppress evidence of the drug paraphernalia and dismiss the battery and obstruction charges on the ground that the officer's warrantless entry into the apartment to retrieve her violated her Fourth Amendment rights. The district court granted the motion, concluding the warrantless entry was unconstitutional, that all subsequent events flowed from this illegality, and therefore evidence of Lusby's resistance and battery on the officer and the subsequent search must be suppressed as fruit of an unlawful entry.

On appeal, we noted that the exclusionary rule is applicable only if there is a causal connection between the police misconduct and the acquisition of the challenged evidence. *Lusby*, 146 Idaho at 508, 198 P.3d at 737. We further noted that Lusby's use of physical

---

[2] On appeal, Cantu attempts to characterize the motion to suppress as a motion to dismiss. The record indicates the matter was pursued as a motion to suppress below and treated as such by both the magistrate and the district court.

violence against the officer was a crime and was not justified by the officer's unlawful entry into her home, stating that it is well established that an individual may not use force to resist a peaceable arrest by one she knows or has good reason to believe is a police officer, even if the arrest is illegal under the circumstances. *Id*. at 509, 198 P.3d at 738 (citing *State v. Richardson*, 95 Idaho 446, 451, 511 P.2d 263, 268 (1973); *State v. Wren*, 115 Idaho 618, 627, 768 P.2d 1351, 1360 (Ct. App. 1989); *State v. Wilkerson*, 114 Idaho 174, 177-78, 755 P.2d 471, 474-75 (Ct. App. 1988)). Instead, we recognized that an individual subjected to illegal arrest should later pursue rights and remedies afforded by the civil or criminal law. *Id*. We then concluded that the evidence should not be suppressed, on the following analysis:

> It appears to be a nearly universal rule in American jurisdictions that when a suspect responds to an unconstitutional search or seizure by a physical attack on the officer, evidence of this new crime is admissible notwithstanding the prior illegality. *See* WAYNE R. LaFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 11.4(j) (4th ed. 2004). This was our conclusion in *Wren*, 115 Idaho 618, 768 P.2d 1351. In that case, police contacted the defendant in his backyard after they received a noise complaint. During this encounter, the defendant went into his house. The officers followed him, and an altercation ensued. The defendant was charged with, among other things, battery and resisting arrest. The defendant sought suppression of evidence of these crimes, arguing that police had illegally entered the house. We ultimately remanded for factual determinations, but as guidance on remand commented on the scope of the evidence to be suppressed if the defendant's arrest was ultimately found to be invalid. We noted that evidence relating to his altercation with the officers "flowed not from the arrest but from [the defendant's] conduct," and thus that this evidence was admissible even if the trial court found that the officers had acted improperly. . . .
>
> The rationale [of decisions adopting this rule], is that, although officers may have conducted an unconstitutional search or seizure, a subsequent attack on the officer is a new crime unrelated to any prior illegality. Because there has been no exploitation of the officer's unconstitutional conduct, the purpose of the exclusionary rule--to deter police misconduct--would not be advanced by suppressing evidence of the attack on the officer. As observed by the North Carolina Supreme Court in *State v. Miller* . . . 194 S.E.2d 353, 358 (1973), "Application of the exclusionary rule in such fashion would in effect give the victims of illegal searches [or seizures] a license to assault and murder the officers involved--a result manifestly unacceptable." In sum, the exclusionary rule does not give the aggrieved individual carte blanche to commit criminal acts against a police officer with impunity merely because the officer erred by conducting an unlawful search or seizure.

*Lusby*, 146 Idaho at 509-10, 198 P.3d at 738-39 (footnote omitted).

Application of the exclusionary rule where force is used to resist a peaceable arrest dictates that the district court did not err in denying Cantu's motion to suppress the evidence of her resistance to the officer. In other words, even if Cantu's arrest was illegal in this case, there would be no basis to suppress the evidence requested because it flowed not from the alleged illegality, but from Cantu's conduct.[3]

## B.  Jury Instructions

Cantu contends that the district court erred in giving jury Instruction No. 18 based on the holding in *Richardson*, 95 Idaho at 451, 511 P.3d at 268, that if a defendant has reasonable grounds to believe he is being arrested by a peace officer, he may not use force or violence to resist that arrest. Cantu argues the controlling law (and thus the proper jury instruction) is that articulated by this Court in *Wilkerson*, 114 Idaho at 180, 755 P.2d at 477, where we held that in situations where a defendant refuses to obey an order or *passively* obstructs an act of a public officer which is contrary to law, that individual does not violate I.C. § 18-705. Cantu contends that *Wilkerson* requires that "if there are facts which place at issue whether the officer was not properly or lawfully discharging his duties and the defendant alleges passive resistance to the § 18-705 charge, these issues are to be submitted to the jury."

The question whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Gleason*, 123 Idaho 62, 65, 844 P.2d 691, 694 (1992). A trial court presiding over a criminal case must instruct the jury on all matters of law necessary for the jury's information. I.C. § 19-2132. That is, the court must deliver instructions on the rules of law that are material to the determination of the defendant's guilt or innocence. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009); *State v. Mack*, 132 Idaho 480, 483, 974 P.2d 1109, 1112 (Ct. App. 1999). This necessarily includes instructions on the nature and elements of the crime charged and the essential legal principles applicable to the evidence that has been admitted. *Severson*, 147 Idaho at 710, 215 P.3d at 430; *State v. Gain*, 140 Idaho 170, 172, 90 P.3d 920, 922 (Ct. App. 2004). Each party is entitled to request specific instructions, but requested instructions need be given only if they are "correct and pertinent." I.C. § 19-2132. A proposed instruction is not correct and pertinent if it is:  an erroneous statement of the law,

---

[3]     Contrary to Cantu's argument on appeal, the officer's affidavit submitted in opposition to Cantu's suppression motion attested that she used force to resist arrest by trying to pull away from the officer as he was trying to handcuff her.

adequately covered by other instructions, or not supported by a reasonable view of the trial evidence. *State v. Elison*, 135 Idaho 546, 552, 21 P.3d 483, 489 (2001); *State v. Johns*, 112 Idaho 873, 881, 736 P.2d 1327, 1335 (1987); *State v. Olsen*, 103 Idaho 278, 285, 647 P.2d 734, 741 (1982); *State v. Arrasmith*, 132 Idaho 33, 43-44, 966 P.2d 33, 43-44 (Ct. App. 1998). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993). To be reversible error, an instruction must mislead the jury or prejudice the defendant. *State v. Hansell*, 141 Idaho 587, 590-91, 114 P.3d 145, 148-49 (Ct. App. 2005).

In relevant part, the "elements" instruction given the jury stated:

> In order for the defendant to be guilty of Delaying or Obstructing an Officer, the state must prove each of the following:
> 1. On or about [the] 3rd day of May, 2006,
> 2. in the state of Idaho
> 3. the defendant Sandra Cantu willfully
> 4. delayed or obstructed
> 5. Heyburn Police Officer Kirk Barnes, a public officer,
> 6. in the discharge, or attempt to discharge, any duty of the Heyburn Police Department.

Instruction No. 16 instructed the jury that "[t]he word "duty" includes only the lawful and authorized acts of a public officer." Instruction No. 17 stated that:

> A warrant shall be executed by the arrest of the defendant. The officer need not have the warrant in possession at the time of the arrest, but the officer shall show the warrant to the defendant as soon as possible. A telegraphic or other copy of the warrant of arrest may be used by the officer at the time of the arrest or for the purpose of showing the warrant to the defendant after the defendant's arrest. If the officer does not have the warrant in possession at the time of arrest, the officer shall then inform the defendant of the offense charged and of the fact that a warrant has been issued.

Instruction No. 18, to which Cantu objects on appeal, stated that:

> If a person has reasonable grounds to believe that the person is being arrested by a peace officer, it is the person's duty to refrain from using force or any weapon in resisting arrest regardless of whether or not there is a legal basis for the arrest. A person may not use force to resist arrest by someone the person knows or has good reason to believe is an authorized peace officer engaged in the performance of the officer's duty.

In rejecting Cantu's claim on appeal that the jury was improperly instructed, the district court concluded:

Having considered the Court's ruling in *Wilkerson*, this court has concluded that the instructions given by the magistrate were consistent with that ruling. Instruction No. 16 informed the [j]ury that "The word 'duty' includes only the lawful and authorized acts of a public officer." This is practically verbatim from the *Wilkerson* case. Instruction No. 17 informed the [j]ury of the requirements for execution of a warrant of arrest. Applying these instructions the [j]ury could have found that the officer did not inform Ms. Cantu of the offense charged and thus concluded that the officer was not performing a lawful and authorized act. The [j]ury, apparently, believed the officer's testimony that he informed Ms. Cantu of the warrants and the charges. The court, therefore, finds no error in the [j]ury [i]nstructions.

A review of the instructions as a whole indicate that the jury was, in fact, instructed in accordance with *Wilkerson*. Instruction No. 13 requires that the jury find that Cantu had "delayed or obstructed" an officer in the discharge of his "duty." Combined with Instruction No. 16 which informed the jury that "duty" included only lawful acts of an officer, the instructions operated to instruct the jury that it could not find Cantu guilty of obstructing if it found that the officer did not lawfully arrest her, as defined in Instruction No. 17.

We also conclude that the inclusion of Instruction No. 18 was not erroneous as it did not impermissibly distort the instructions given the jury--it merely instructed the jury that even if the jury concluded that the officer had acted unlawfully, if the jury concluded that Cantu had resisted with force, she could still be found guilty--a correct statement of the law as *Richardson*, upon which Instruction No. 18 is based, has not been overruled. The Idaho Supreme Court made this clear in *State v. Bishop*, 146 Idaho 804, 817, 203 P.3d 1203, 1206 (2009), citing *Wilkerson*, and stating:

> Because an unlawful act is not considered a "duty" under the statute, an individual may peacefully obstruct or refuse to obey an officer's unlawful act without violating the statute [I.C. § 18-705]. An individual may not, however, use force or violence to resist.

In addition, to the extent Cantu alleges that the question of whether she had used force was a question of fact that should have been presented to the jury, we conclude that the instructions as a whole did just that. Specifically, the instructions directed the jury that if it found that Cantu had used force, it would apply Instruction No. 18 regardless of whether the arrest was illegal, but if it found that she had not used force, it would examine whether the officer's act was legal to determine her culpability of the charge. As such, we conclude that the instructions as a whole fairly and accurately represented the applicable law and reflected the evidence presented at trial--therefore, the magistrate did not err in instructing the jury.

8

## C.    Sufficiency of the Evidence

Cantu also contends that there was insufficient evidence presented at trial to convict her of resisting and obstructing an officer in contravention of I.C. § 18-705, because the state failed to prove that the duty which Officer Barnes was discharging was "lawful" such that she could be guilty of resisting the discharge of that duty.

Appellate review of the sufficiency of the evidence is limited in scope. A judgment of conviction, entered upon a jury verdict, will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

Three elements must be satisfied in order to find a violation of I.C. 18-705: "(1) the person who was resisted, delayed or obstructed was a law enforcement officer; (2) the defendant knew that the person was an officer; and (3) the defendant also knew at the time of the resistance that the officer was attempting to perform some official act or duty." *Bishop*, 146 Idaho at 816, 203 P.3d at 1215; *State v. Adams*, 138 Idaho 624, 629, 67 P.3d 103, 108 (Ct. App. 2003). The term "duty" in section 18-705 includes only "those lawful and authorized acts of a public officer." *Bishop*, 146 Idaho at 817, 203 P.3d at 1216; *Wilkerson*, 114 Idaho at 180, 755 P.2d at 477. Because an unlawful act is not considered a "duty" under the statute, an individual may peacefully obstruct or refuse to obey an officer's unlawful act without violating the statute. An individual may not, however, use force or violence to resist. *Id.*

On appeal, Cantu focuses solely on the lawfulness of the officer's act in not providing notice of the charges named in the outstanding warrants. However, as we discussed above, Cantu also could have been found guilty if the jury determined she had used force in resisting arrest, irrespective of the officer's noncompliance with I.C.R. 4(h)(3). Based on the evidence adduced at trial, a reasonable trier of fact could have found that the prosecution sustained its

burden of proving the essential elements of a violation of I.C. § 18-705 beyond a reasonable doubt. Thus, Cantu's claim that there was insufficient evidence to support her conviction fails.

## D.    Cumulative Error

Cantu argues that an accumulation of irregularities aggregated to result in the absence of a fair trial. Specifically, she contends that juror misconduct occurred during *voir dire*, when a juror failed to disclose that he had a "social relationship" with Cantu, and that an improper jury verdict form instruction was submitted to the jury referring to her husband who had been separately charged for his involvement in the incident.

Under the cumulative error doctrine, an accumulation of irregularities, each of which might be harmless in itself, may in the aggregate reveal the absence of a fair trial in contravention of the defendant's right to due process. *Severson*, 147 Idaho at 723, 215 P.3d at 443 (quoting *State v. Martinez*, 125 Idaho 445, 453, 872 P.2d 708, 716 (1994)). The presence of errors alone, however, does not require the reversal of a conviction. I.C.R. 52; *State v. Moore*, 131 Idaho 814, 823, 965 P.2d 174, 183 (1998). As the state points out, Cantu cites no authority to support the contention that either claim of error was prejudicial. As such, the issues are waived on appeal. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) (holding that a party waives an issue on appeal if either authority or argument is lacking).

### III.

### CONCLUSION

The magistrate did not err in denying Cantu's motion to suppress her conduct in resisting the arrest, because the exclusionary rule does not operate to suppress such evidence. The magistrate also did not err in instructing the jury, because the instructions accurately stated the law and were appropriate given a reasonable view of the evidence presented at trial. In addition, there was sufficient evidence to sustain Cantu's conviction where a jury could find beyond a reasonable doubt that she employed force in resisting the officer's attempt to effectuate an arrest. Finally, because Cantu failed to cite authority for her assignments of error which she contends amounted to cumulative error, we conclude the issues are deemed waived. The district court's memorandum decision and order on intermediate appeal affirming Cantu's judgment of conviction and sentence for resisting and obstructing an officer is affirmed.

Judge GRATTON **CONCURS.**

Chief Judge LANSING **CONCURS IN THE RESULT.**

10